

FILED

Mar 08 2016, 8:20 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyrone Grayson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 8, 2016<br><br>Court of Appeals Case No.<br>49A05-1505-CR-350<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>The Honorable David M. Seiter, Commissioner<br><br>Trial Court Cause No.<br>49G20-1402-FB-9085 |

**Mathias, Judge.**

[1] Tyrone Grayson ("Grayson") was convicted in Marion Superior Court of Class B felony unlawful possession of a firearm by a serious violent felon. He appeals his conviction and argues that the trial court abused its discretion when it

admitted into evidence the handgun discovered during a warrantless search of his vehicle. Specifically, he argues that the officer lacked reasonable suspicion to conduct a Terry stop because the report of alleged illegal activity was provided by an anonymous tipster.

## Facts and Procedural History

[2] On February 23, 2014, at approximately 5:20 a.m., Indianapolis Metropolitan Police Department Officer Jonathan Schultz ("Officer Schultz") responded to a dispatch that an anonymous caller reported a person inside a silver or gray vehicle waving a firearm at Washington Point Apartments. When Officer Schultz arrived at the apartment complex, he saw a silver vehicle with its headlights off parked perpendicular to the parking spots. As the officer pulled into the parking lot and was driving toward the vehicle, the vehicle pulled into a parking space. The officer did not see any other silver or gray occupied vehicles in the parking lot.

[3] Officer Schultz activated his rear emergency lights and parked his vehicle at an "angle towards where he was parked at, off to the side."[1] Tr. p. 71. Then the officer, who was in full uniform and carrying a flashlight, approached the driver's side of the vehicle. The driver identified himself as Grayson. Officer

---

[1] At the suppression hearing, Grayson's passenger testified that Officer Schultz parked his vehicle "like at a cattycorner position" from behind. While the testimony is unclear, no one testified that Officer Shultz's vehicle prevented Grayson from backing his vehicle out of its parking space. Tr. pp. 94, 97.

Schultz asked Grayson if he lived at the apartment complex, and Grayson stated that he did not but that his passenger did.

[4] Next, Officer Schultz mentioned the dispatch about a person waving a gun. As he continued his conversation with Grayson, through the open driver's side window, Officer Schultz observed the butt of a firearm underneath the driver's seat between Grayson's feet. Officer Shultz asked if any firearms were in the vehicle, and Grayson stated that there were not, a statement that was clearly a lie, based on Officer Schultz's personal observation.

[5] At about this time, Officer Michael Wagner-Gilbert ("Officer Wagner-Gilbert") who also responded to the dispatch, arrived on the scene and approached the passenger side of the vehicle. Officer Schultz then asked Grayson to step out of the vehicle. He asked Grayson if he had a permit to carry a firearm, and Grayson replied that he did not.

[6] Officer Schultz asked if he could look through the vehicle, and Grayson gave the officers permission to search. Officer Schultz placed Grayson in handcuffs and walked him to the rear of the vehicle. Officer Wagner-Gilbert looked into the driver's side of the vehicle and, like Officer Schultz, Officer Wagner-Gilbert saw the butt of the firearm underneath the driver's seat. Officer Wagner-Gilbert removed the firearm from the vehicle and placed it in an evidence bag. After he determined that Grayson had prior felony convictions, Officer Schultz arrested Grayson for unlawful possession of a firearm by a serious violent felon. The passenger in Grayson's vehicle was released at the scene.

[7]     Grayson was subsequently charged with Class B felony unlawful possession of a firearm by a serious violent felon.[2] Prior to trial, Grayson filed a motion to suppress the firearm found during the warrantless search. A hearing was held on the motion on August 6, 2014. In his post-hearing memorandum, Grayson claimed that the officer lacked reasonable suspicion to conduct a Terry stop and that he was not advised of his *Pirtle* rights before the vehicle was searched. In its response to Grayson's arguments, the State conceded that Grayson was in custody when Officer Schultz "pulled his marked police vehicle up behind the silver vehicle that Grayson was operating." Appellant's App. p. 49. However, the court concluded that the officer had reasonable suspicion to believe criminal activity had occurred, and *Pirtle* warnings were not necessary because Officer Schultz had probable cause to search the vehicle after seeing the handgun between Grayson's feet. *Id*. at 49-50.

[8]     Grayson's bench trial was held on March 11, 2015. Grayson objected to the admission of the firearm for the reasons raised in the motion to suppress, and he also argued that the investigatory stop was unreasonable because it was based solely on an anonymous tip. Specifically, Grayson argued that the anonymous caller only reported a person waving a gun in a silver vehicle at the apartment complex and did not provide his or her name or address. The trial court overruled the objection and found Grayson guilty of Class B felony

---

[2] During the search incident to arrest, cocaine was found on Grayson's person. He was also charged with Class C felony possession of cocaine and a firearm. This count was dismissed at trial.

unlawful possession of a firearm by a serious violent felon. The trial court ordered him to serve twelve years executed in the Department of Correction. Grayson now appeals.[3]

## Standard of Review

Although Grayson filed a pre-trial motion to suppress, because he appeals following a completed trial, the issue is properly framed as whether the trial court abused its discretion in admitting the evidence. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). The admission of evidence is within the discretion of the trial court. *Id*. at 259-60. We will reverse a ruling on the admission of evidence only for an abuse of that discretion, which occurs only when the ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. at 260.

## Discussion and Decision

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."[4] "Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do." *Id.* at 261. Consensual encounters in which a citizen

---

[3] On February 11, 2016, we held oral argument in this case at the Indiana University Robert H. McKinney School of Law. We commend counsel for the quality of their advocacy and extend our thanks to the faculty, especially Professor Schumm, to the students, and to staff for their hospitality.

[4] Grayson does not challenge the stop under Article One, Section Eleven of the Indiana Constitution.

voluntarily interacts with a police officer do not compel Fourth Amendment analysis. *Id*. Nonconsensual encounters typically fall into two categories. *Id*. The first is a full arrest, which requires probable cause. *Id*. The second is a brief investigative stop, which requires a lower standard of reasonable suspicion. *Id.*

[11]  Specifically, law enforcement officers may stop and briefly detain a person if the officer has reasonable suspicion to believe that criminal activity has occurred or is about to occur or that "'criminal activity may be afoot.'" *Holly v. State*, 918 N.E.2d 323, 325 (Ind. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Specifically, in *Terry* the United States Supreme Court held:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30.

[12]  However, "'[s]uch reasonable suspicion must be comprised of more than hunches or unparticularized suspicions.'" *Clark*, 994 N.E.2d at 263 (quoting *State v. Murray*, 837 N.E.2d 223, 225-26 (Ind. Ct. App. 2005), *trans. denied*). Taking into account the totality of the circumstances or the whole picture, the

detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Id*. at 264. In making this determination, we must examine the facts as known to the officer at the moment of the stop. *Id.* Findings of reasonable suspicion are reviewed de novo, and this is necessarily a fact-sensitive inquiry. *Id.*

[13] Grayson argues that the trial court abused its discretion when it admitted the firearm into evidence because the officers lacked reasonable suspicion to conduct a Terry stop.[5] Specifically, he argues that the anonymous tip did not provide any details beyond what the general public might observe and that Officer Schultz's observations did not corroborate the anonymous tip.

[14]  "[A]n anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid Terry stop." *Sellmer v. State*, 842 N.E.2d 358, 361 (Ind. 2006). The United States Supreme Court has similarly concluded that an "anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," but "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (citation omitted).

[15] In the case before us, the anonymous tipster reported a person inside a silver or

---

[5] The State does not argue that the encounter was consensual but refers to it as an investigatory stop throughout its brief.

gray vehicle at Washington Point Apartments waving a firearm. Certain details provided by the anonymous tipster were corroborated by Officer Schultz. When he arrived at Washington Point Apartments shortly after he heard the dispatch, the officer observed a silver or gray vehicle with its headlights off parked perpendicular to the parking spots. As the officer pulled into the parking lot and was driving toward the vehicle, the vehicle pulled into a parking space. The officer did not see any other occupied silver or gray vehicles in the dark parking lot at 5:20 a.m. A reasonable inference can be made that vehicular traffic was minimal given the time of day.

[16] When we consider the reasonableness of this investigatory stop, we "must strike 'a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers.'" *Rutledge v. State*, 28 N.E.3d 281, 290 (Ind. Ct. App. 2015) (quoting *Carter v. State*, 692 N.E.2d 464, 466 (Ind. Ct. App. 1997) (quoting *Brown v. Texas*, 443 U.S. 47, 50 (1979))). Protecting the public from gun violence is a legitimate and paramount concern of law enforcement, and the State is legitimately concerned with deterring gun violence and possession of firearms by unlicensed individuals. These concerns and the danger of the allegations of the anonymous tipster warranted an immediate response by law enforcement officers for the safety of the general public.

[17] Here, Officer Schultz responded immediately to a dispatch involving an individual "waving a gun" just before dawn, while it was still dark. *Cf. State v. Renzulli*, 958 N.E.2d 1143, 1148 (Ind. 2011) (observing that the concerned

citizen reported a drunk driver, which warranted an "immediate response by the police for the safety of the general public"). Officer Schultz parked his vehicle near and at an angle to Grayson's, turned on the vehicle's rear emergency lights, and approached Grayson's vehicle in full uniform, armed, and using a flashlight, in order to ask Grayson a few questions based on the anonymous tip. This is reasonable, appropriate, and laudable community policing, the type of law enforcement activity that is consistent with the balance citizens want struck between personal independence and personal safety. *See R.H. v. State*, 916 N.E.2d 260, 268 (Ind. Ct. App. 2009) (stating "[a] healthy, civil society is most robust when it feels safe and when that feeling of safety is validated through interaction with vigilant and responsive law enforcement engaged in the important business of policing neighborhoods within a community") (Mathias, J., concurring), *trans. denied*.

[18] Grayson relies on *Florida v. J.L.*, 529 U.S. 266 (2000), in support of his argument that the anonymous tip was not sufficiently corroborated by Officer Schultz, and therefore, the officer lacked reasonable suspicion to make an investigatory stop. In *J.L.*, an anonymous caller reported that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. When Miami police officers arrived at the bus stop several minutes later, they observed three black males, and one of the three, later identified as J.L., was wearing a plaid shirt. The officers did not see a firearm or any other threatening or unusual movement. One of the officers approached J.L., ordered him to put his hands on the bus stop, frisked him, and seized a gun from his

pocket. After concluding that the officers lacked reasonable suspicion necessary to justify a Terry stop, the Supreme Court held that "an anonymous tip lacking indicia of reliability . . . does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm. *Id*. at 274.

In our case, the tipster alleged that an individual was waving a gun. When the officer arrived at the apartment complex and approached the vehicle described in the dispatch, the vehicle slowly moved into a parking spot. Finally, this case does not involve a stop and frisk. Officer Schultz simply approached the vehicle and asked Grayson a couple of questions, and while doing so, saw the firearm in plain sight, belying Grayson's claims that no weapon was in the car. For these reasons, we are not persuaded by Grayson's reliance on *J.L.*

Finally, we do not believe our holding is inconsistent with *Sellmer*, another case upon which Grayson relies. In *Sellmer*, an anonymous tipster reported that a silver Dodge parked backwards in a parking lot in front of a Noblesville hair salon contained a large amount of drugs, and the court observed:

> [P]recedent dictates that for an anonymous tip to constitute the reasonable suspicion necessary for a valid investigatory stop, at least two conditions must be met. First, "significant aspects of the tip [must be] corroborated by the police." Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. . . . Second, an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior.

842 N.E.2d at 361 (internal citations omitted). The *Sellmer* Court determined that the anonymous tip "lacked any information that would allow the police to corroborate the caller's claim that illegal activity was afoot" and did not "provide the Noblesville police any information regarding Sellmer's future acts that would bolster its reliability." *Id.* at 362.

[21] A comparison of the underlying facts in *Sellmer* and those before us is revealing and compelling. The tipster in *Sellmer* reported ongoing, non-violent, criminal conduct, i.e. possession of drugs. The anonymous tipster in this case reported witnessing criminal conduct risking serious bodily injury to those in the immediate vicinity. A report of an individual waving a gun involves an immediate threat to the general public. This is an allegation that warrants "immediate response by the police for the safety of the general public[.]" *See Renzulli*, 958 N.E.2d at 1148, 1150 (involving a report of a drunk driver and concluding that there was reasonable suspicion to justify an investigatory stop where "the circumstances include[d] the time of day with little vehicular traffic, vehicle color and make, location of the vehicle, and almost immediate response and arrival at the scene by the police"); *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000) (concluding that there was reasonable suspicion to justify an investigatory stop where an unidentified individual told officers that Bogetti was possibly intoxicated and had just exited a McDonald's restaurant driving a white semi truck); *But see Berry v. State*, 766 N.E.2d 805, 810 (Ind. Ct. App.

2002) (concluding that the anonymous tip lacked sufficient indicia of reliability because the officer did not observe any activity to corroborate the tip that a white male in a green jacket waving a firearm in a parking lot threatened to "cap someone" and drove away in an S10 Blazer), *trans. denied*. Here, Grayson also lied to Officer Schultz about whether he had a firearm early in their conversation, precisely while Officer Schultz observed the butt of a gun in plain view on the driver's side floorboard of the vehicle.

## Conclusion

[22] For all of these reasons, we conclude that Officer Schultz had reasonable suspicion to justify the investigatory stop at issue in this case. The anonymous tip alleged personal observation of gun-related recklessness and the serious risk of gun-related violence. Before he approached Grayson's vehicle, the movement of Grayson's vehicle when Officer Schultz entered the parking lot confirmed the likelihood that an occupant of the vehicle was involved in the criminal activity alleged. Officer Schultz's response was also appropriate as an act of community policing and in light of the State's compelling interest in protecting the general public from incipient gun violence. Because the investigatory stop was proper, the trial court did not abuse its discretion when it admitted into evidence the firearm discovered during that stop.

[23] Affirmed.

Kirsch, J., and Bradford, J., concur.