## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 21 2017, 8:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jaylin Brown,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 21, 2017

Court of Appeals Case No.
49A04-1610-CR-2368

Appeal from the Marion Superior Court

The Honorable Matthew Tandy, Judge Pro Tempore

Trial Court Cause No.
49G19-1607-CM-25785

**Pyle, Judge.**

# Statement of the Case

[1] Jaylin Brown ("Brown") appeals his conviction, following a bench trial, of Class A misdemeanor carrying a handgun without a license.[1] Brown argues that the trial court abused its discretion in admitting evidence seized from a search because the investigatory stop and search that produced the evidence were not based on reasonable suspicion. We find that the court properly admitted the evidence because there was reasonable suspicion for both the investigatory stop and subsequent search. Accordingly, we affirm.

[2] We affirm

# Issue

> Whether the trial court abused its discretion in admitting evidence seized from a search following an investigatory stop.

# Facts

[3] On July 4, 2016, Officer D. Jackson ("Officer Jackson") and Officer Justin Baker ("Officer Baker"), police officers with the Indianapolis Metropolitan Police Department, were helping with crowd control for the Fourth of July celebration in downtown Indianapolis. An elderly man approached Officer Jackson and informed him that a young black male wearing a white tee shirt and long jean shorts was "showing his gun to people on the bus and people

---

[1] IND. CODE § 35-47-2-1.

around the intersection of 34th and Illinois."² (Tr. Vol. 3 at 16). The elderly man further "pointed to Mr. Brown and described where he was walking; northbound on Illinois Street." *Id.* Officers Baker and Jackson walked up to Brown, who was standing with two other males also wearing white tee shirts and long jean shorts, and "said something to the effect of, [']hey can we talk to you a second.[']" (Tr. Vol. 2 at 9). One of the young men took off running, but Brown and the other unidentified male remained in their positions. Officer Baker proceeded to chase the young man who ran away.

[4] Officer Jackson remained with the two young men who had not run and testified that "[Brown] was reaching in his waistband." (Tr. Vol. 3 at 20). He placed Brown in handcuffs and asked if he was carrying a weapon. Brown responded that he was not. Officer Jackson then patted him down for weapons and "[c]learly felt a weapon on the right side of his body." (Tr. Vol. 2 at 18). He secured the weapon and waited for Officer Baker to return. Brown was subsequently arrested and the weapon was given to evidence technician Christopher Pickerel to place into the property room.

[5] The State charged Brown with Class A misdemeanor carrying a handgun without a license. Subsequently, the trial court held a bench trial. During the trial, the State asked Officer Jackson to identify the handgun. He testified that

---

² Officer Jackson testified later that "[the elderly man] mentioned something about a bus," but Officer Jackson "was not sure if [the elderly man] was on it or not." (Tr. Vol. 3 at 18). The contact with the three boys and the officers, however, occurred downtown on Illinois Street. (Tr. Vol 3. at 15).

the handgun brought into court was the same gun found on Brown, and the State moved to admit it into evidence. Brown then moved to suppress the handgun. (Tr. Vol. 2 at 20). The trial court determined that "the defendant [had not] put any evidence before the Court that . . . [was] . . . appropriate for suppression" and that ". . . a suppression [was] misplaced at [that] time." (Tr. Vol. 2 at 20-21). The court allowed Brown to state his reasoning for suppressing the handgun on the record but ultimately denied his request.

[6] At the conclusion of the trial, the court convicted Brown. The court imposed a 365-day sentence and gave Brown 315 days probation. Brown now appeals.

## Decision

[7] Brown argues that the trial court abused its discretion when it admitted the gun into evidence because there was not reasonable suspicion of criminal activity to justify Officer Jackson's investigatory stop and subsequent search that produced the gun.[3] The admission of evidence is within the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). This Court will reverse a ruling on the admission of evidence only for an abuse of that discretion, which

---

[3] We do not understand why the trial court felt that Brown's objection to the State's request to admit the handgun was misplaced. It is well settled that a contemporaneous objection to evidence believed to be unlawfully seized is all that is necessary to alert the trial court to a potential legal issue requiring the suppression of evidence. *Brown v. State*, 929 N.E.2d 204 (Ind. 2010). However, we need not address Brown's argument that the trial court erred in finding Brown's objections "misplaced" because we are addressing his objection on its merits. (Brown's Br. 7).

occurs when the ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. at 260.

[8] The Fourth Amendment protects people from unreasonable searches and seizures. U.S. Const. Amend. IV. Warrantless seizures and searches by law enforcement officers are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *Holder v. State*, 847 N.E.2d 930 (Ind. 2006). One of those exceptions involves what is commonly known as a "*Terry*-stop". This type of seizure permits a police officer to stop and briefly detain a person for investigatory purposes without a warrant if that officer has a reasonable suspicion, based on specific articulable facts, that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In addition, a police officer, for his own protection and safety, may conduct a "pat-down" search of the person's outer clothing to find weapons that the officer reasonably believes or suspects are then in the possession of the person he has detained. *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979) (holding that reasonable suspicion that a person is armed applies to pat-downs conducted during investigatory stop). Further, reasonable suspicion requires at least a minimal level of objective justification and more than a 'hunch' that criminal activity is taking place. *Terry*, 392 at 27. In other words, reasonable suspicion exists if the facts known to an officer would cause an ordinarily prudent person to believe that criminal activity is occurring. *Terry*, 392 U.S. at 22.

[9] Brown argues that because the elderly man's identity and reliability remain unknown, the anonymous tip did not give rise to sufficient reasonable suspicion

to stop him. While it is true that an "'anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,'"[] "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Grayson v. State*, 52 N.E.3d 24, 28 (Ind. Ct. App. 2016)(*quoting Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

[10] In *Grayson*, we found that an anonymous tip leading police to a person inside a gray car observed waving a gun was sufficiently reliable when corroborated by the police officer. In that case, the officer traveled to the reported location, located the gray car, and confirmed there were no other cars matching that description. Based on the officer's corroboration of the facts and the time of day (5:20 a.m.), we found that there was reasonable suspicion to justify the search. *Id.*

[11] Here, the facts are analogous. The elderly man, although anonymous, informed police officers that a young black man was showing off a gun on Illinois Street. He gave the officers a specific description: a young black male wearing a white tee shirt and long jean shorts on Illinois Street. The officers went to the reported location and found a group of young black men wearing the clothing described by the elderly man. The information given and then corroborated by Officer Jackson gave rise to reasonable suspicion that a young black male was unlawfully in possession of a firearm. As we noted in *Grayson*, a balance must be struck between the public's interest in safety and the individual's right to be free from arbitrary interference by police officers. *Id.* at

28. "Protecting the public from gun violence is a legitimate and paramount concern of law enforcement, and the State is legitimately concerned with deterring gun violence and possession of firearms by unlicensed individuals." *Id.* As in *Grayson*, these concerns and the allegations of a person showing of a gun in downtown Indianapolis during the Fourth of July celebration provided the officers with reasonable suspicion to justify a brief investigatory stop.

[12] Brown also contends that Officer Jackson did not have reasonable suspicion to pat-down his outer clothing to determine if he had a gun. Specifically, he argues that reasonable suspicion was lacking because he did not change his behavior or flee like the other young man. As noted above, an officer may conduct a pat-down if the officer reasonably believes, based on specific and articulable facts, that the particular individual is armed and dangerous. *Terry v. Ohio*, 392 U.S. at 21. The officer need not be absolutely certain that the individual is armed so long as a reasonably prudent man would be warranted in believing that his safety or that of others was in danger. *Terry v. Ohio*, 392 U.S. at 27.

[13] During the trial, Officer Baker testified that in downtown on July 4th "in the last few years there's been more reports of violence." (Tr. Vol. 2 at 14). Similarly, Officer Jackson testified that they were patrolling downtown because of a public safety concern for the crowd size during the Fourth of July celebration. (Tr. Vol. 2 at 16-17). Further, he testified that after the young male fled, Brown "was reaching in his waistband." (Tr. Vol. 3 at 20). Taking into account (1) the description provided by the elderly man that a person was showing off a

gun, (2) Brown's hand movement toward his waistband, (3) the fact that one of the young men fled, and (4) the officer's knowledge of public concern over the safety of the crowds downtown during previous Fourth of July celebrations, we find that Officer Jackson had sufficient reasonable suspicion to justify a pat-down search. *See Williams v. State*, 754 N.E.2d 584, 588 (Ind. Ct. App. 2001) (finding that when a police officer makes a *Terry* stop and has a reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him). As a result, the trial court did not abuse its discretion in admitting the handgun into evidence.

[14] Affirmed.

May, J., and Brown, J., concur.