## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2018, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Tyrone Grayson<br>Pendleton, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Tyrone Grayson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 30, 2018<br><br>Court of Appeals Case No.<br>49A04-1709-PC-2302<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>The Honorable James K. Snyder, Commissioner<br><br>Trial Court Cause No.<br>49G20-1607-PC-26978 |

**Mathias, Judge.**

Tyrone Grayson ("Grayson") appeals the Marion Superior Court's denial of his petition for post-conviction relief. Grayson argues that his trial counsel was ineffective for failing to challenge the investigatory stop under Article 1, Section 11 of the Indiana Constitution.

We affirm.

## Facts and Procedural History

The following facts and procedural history of Grayson's trial are taken from his direct appeal:

> On February 23, 2014, at approximately 5:20 a.m., Indianapolis Metropolitan Police Department Officer Jonathan Schultz ("Officer Schultz") responded to a dispatch that an anonymous caller reported a person inside a silver or gray vehicle waving a firearm at Washington Point Apartments. When Officer Schultz arrived at the apartment complex, he saw a silver vehicle with its headlights off parked perpendicular to the parking spots. As the officer pulled into the parking lot and was driving toward the vehicle, the vehicle pulled into a parking space. The officer did not see any other silver or gray occupied vehicles in the parking lot.
>
> Officer Schultz activated his rear emergency lights and parked his vehicle at an "angle towards where he was parked at, off to the side." Then the officer, who was in full uniform and carrying a flashlight, approached the driver's side of the vehicle. The driver identified himself as Grayson. Officer Schultz asked Grayson if he lived at the apartment complex, and Grayson stated that he did not but that his passenger did.

Next, Officer Schultz mentioned the dispatch about a person waving a gun. As he continued his conversation with Grayson, through the open driver's side window, Officer Schultz observed the butt of a firearm underneath the driver's seat between Grayson's feet. Officer Schultz asked if any firearms were in the vehicle, and Grayson stated that there were not, a statement that was clearly a lie, based on Officer Schultz's personal observation.

At about this time, Officer Michael Wagner–Gilbert ("Officer Wagner–Gilbert") who also responded to the dispatch, arrived on the scene and approached the passenger side of the vehicle. Officer Schultz then asked Grayson to step out of the vehicle. He asked Grayson if he had a permit to carry a firearm, and Grayson replied that he did not.

Officer Schultz asked if he could look through the vehicle, and Grayson gave the officers permission to search. Officer Schultz placed Grayson in handcuffs and walked him to the rear of the vehicle. Officer Wagner–Gilbert looked into the driver's side of the vehicle and, like Officer Schultz, Officer Wagner–Gilbert saw the butt of the firearm underneath the driver's seat. Officer Wagner–Gilbert removed the firearm from the vehicle and placed it in an evidence bag. After he determined that Grayson had prior felony convictions, Officer Schultz arrested Grayson for unlawful possession of a firearm by a serious violent felon. The passenger in Grayson's vehicle was released at the scene.

Grayson was subsequently charged with Class B felony unlawful possession of a firearm by a serious violent felon. Prior to trial, Grayson filed a motion to suppress the firearm found during the warrantless search. A hearing was held on the motion on August 6, 2014. In his post-hearing memorandum, Grayson claimed that the officer lacked reasonable suspicion to conduct a Terry stop and that he was not advised of his *Pirtle* rights before the vehicle was searched. In its response to Grayson's arguments, the State conceded that Grayson was in custody when Officer Schultz

"pulled his marked police vehicle up behind the silver vehicle that Grayson was operating." However, the court concluded that the officer had reasonable suspicion to believe criminal activity had occurred, and *Pirtle* warnings were not necessary because Officer Schultz had probable cause to search the vehicle after seeing the handgun between Grayson's feet.

Grayson's bench trial was held on March 11, 2015. Grayson objected to the admission of the firearm for the reasons raised in the motion to suppress, and he also argued that the investigatory stop was unreasonable because it was based solely on an anonymous tip. Specifically, Grayson argued that the anonymous caller only reported a person waving a gun in a silver vehicle at the apartment complex and did not provide his or her name or address. The trial court overruled the objection and found Grayson guilty of Class B felony unlawful possession of a firearm by a serious violent felon. The trial court ordered him to serve twelve years executed in the Department of Correction.

*Grayson v. State*, 52 N.E.3d 24, 25–26 (Ind. Ct. App. 2016) (internal citations omitted), *trans. denied*.

[4]     On direct appeal, Grayson argued that the trial court abused its discretion when it admitted into evidence the handgun discovered during a warrantless search of his vehicle. He raised the issue under the Fourth Amendment protection against warrantless searches and seizures, but did not raise the issue under Article 1, Section 11 of the Indiana Constitution. This court concluded that Officer Schultz had reasonable suspicion to conduct the investigatory stop. Therefore, the trial court did not abuse its discretion when it admitted the handgun into evidence at trial. *Id.* at 30.

[5] On January 4, 2017, Grayson filed a *pro se* petition for post-conviction relief. In his petition, Grayson argued that he was denied effective assistance of counsel when his trial counsel failed to challenge the stop under Article 1, Section 11 of the Indiana Constitution.

[6] At the post-conviction hearing held on March 3, 2017, Grayson's trial counsel testified that she should have raised Article 1, Section 11 of the Indiana Constitution as a basis for suppressing the evidence, and that she did not have a strategic reason for failing to raise the issue. *See* PCR Tr. p. 10. Appellate counsel submitted an affidavit, which stated that had the Article 1, Section 11 argument been preserved, she "would have raised it on appeal." Ex. Vol. I., Petitioner's Ex. 1, p. 7. And she was of the opinion that "there can be no legitimate or strategic reason for arguing against the admission of the evidence in this case on Fourth Amendment grounds but not based on Article 1, [Section] 11." *Id.* at 8.

[7] On July 17, 2017, the post-conviction court issued its findings of facts and conclusions of law. The court ultimately found:

> [U]nder the totality of the circumstances, [. . .] Grayson has not met his burden, by a preponderance of the evidence, to show that, had [trial counsel] argued for suppression of the evidence under Article 1[,] Section 11, there is a reasonable probability that the result of the proceedings would have been different.

Appellant's App. Vol. II, pp. 87–88. Accordingly, the post-conviction court denied Grayson's petition for post-conviction relief. Grayson now appeals.

# Standard of Review

[8] The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, we neither reweigh evidence nor judge the credibility of witnesses. *Id*. Therefore, to prevail, Grayson must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*.

[9] Where, as here, the post-conviction court made specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id*. Accordingly, we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id*.

[10] A claim of ineffective assistance of trial counsel here requires a showing that: (1) Grayson's trial counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance

prejudiced Grayson such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). And when it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011).

# Discussion and Decision

[11] Grayson argues that his trial counsel's performance was deficient when she failed to raise Article 1, Section 11 of the Indiana Constitution as a basis to suppress evidence, and that he was prejudiced by the deficient performance. *See* Appellant's Br. at 18.[1]

## I. Ineffective Assistance of Trial Counsel

[12] Grayson is entitled to post-conviction relief only if raising an objection under Article 1, Section 11 would result in "a reasonable probability that, but for counsel's [failing to raise Article 1, Section 11], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We need not consider

---

[1] Grayson also argues that the post-conviction court erred in denying his relief by failing to address his Sixth Amendment confrontation claim. However, the issue was available at the time of Grayson's direct appeal, and therefore, may not be raised in post-conviction proceedings. *See* Ind. Post-Conviction Rule 1(b) (stating post-conviction relief "is not a substitute for a direct appeal from the conviction and/or the sentence").

whether trial counsel's performance was deficient because we can dispose of Grayson's claim under the prejudice prong of *Strickland*.

[13] As we noted above, the trial court and our court rejected Grayson's challenge to the stop on Fourth Amendment grounds. Although the language of Article 1, Section 11 of the Indiana Constitution tracks the Fourth Amendment verbatim, Indiana courts have explicitly rejected the "expectation of privacy" as a test of the reasonableness of a search and seizure. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005).

[14] Rather, the legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Id.* (citing *Moran v. State*, 644 N.E.2d 536, 539 (Ind. 1994)). Although there may well be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: (a) the degree of concern, suspicion, or knowledge that a violation has occurred, (b) the degree of intrusion the method of the search and seizure imposes on the citizen's ordinary activities, and (c) the extent of law enforcement needs. *Id.* at 361.

*A. The Degree of Concern, Suspicion, or Knowledge*

[15] Officer Schultz testified he received a dispatch regarding "a person in a [silver] vehicle waiving [sic] a firearm." Trial Tr. pp. 8–9. The dispatch also included the address of the vehicle's location. It was five o'clock in the morning, Grayson's vehicle was the only silver vehicle in the parking lot, and Grayson

was parked perpendicular to the marked parking spaces. When Officer Schultz approached the vehicle, he was in full uniform, driving his marked police car, and used a flashlight as he approached Grayson's vehicle. Officer Schultz testified that he saw the firearm "placed underneath the driver seat, in between [] Mr. Grayson's legs." *Id*. at 17–18. Officer Schultz asked Grayson if there was a firearm in the vehicle. Grayson lied and said there was not. Officer Schultz then asked Grayson if he had a permit to carry a firearm, which Grayson stated he did not. Seeing the gun in plain sight reasonably raised Officer Schultz's knowledge and suspicion that a violation had occurred. Further, Officer Wagner-Gilbert also testified that upon arriving to the scene, he "observed [] a gun handle sticking out from the bottom of the driver's seat . . . between [Grayson's] legs." *Id*. at 31. Based on this testimony, we conclude that the officers had a reasonable degree of concern, suspicion, and knowledge that a violation had occurred.

*B. The Degree of Intrusion*

[16]    In the instant case, the degree of intrusion was minimal. As Officer Schultz approached Grayson's parked vehicle, the window was already down, which allowed the handle of Grayson's firearm to be seen in plain sight. The actual intrusion of Officer Schultz's search of the vehicle did not occur until after he saw the handle of the gun. Upon seeing the gun, officer safety was implicated and warranted Officer Schultz's temporary detainment of Grayson while the vehicle was searched.

## C. The Extent of Law Enforcement Needs

Here, the police officers received a tip that an individual was waving a gun around in his vehicle. The officers responded with the goal of protecting the public from potential gun violence. The need to ensure public safety from gun violence is paramount and is more than reasonable with regard to the extent of law enforcement needs.

## D. Totality of the Circumstances

It is well-settled that "[a] healthy, civil society is most robust when it feels safe and when that feeling of safety is validated through interaction with vigilant and responsive law enforcement engaged in the important business of policing neighborhoods within a community." *Brown v. State*, 62 N.E.3d 1232, 1238 (Ind. Ct. App. 2016) (quoting *R.H. v. State*, 916 N.E.2d 260, 268 (Ind. Ct. App. 2009) (Mathias, J., concurring)), *trans. denied*. Officer Schultz reasonably suspected that a violation had occurred, the degree of intrusion was minimal, and protecting the public from gun violence is a paramount concern of law enforcement. Therefore, under the totality of these circumstances, Officer Schultz's conduct was reasonable.

# Conclusion

Accordingly, the outcome of Grayson's case under Article 1, Section 11 of the Indiana Constitution is the same as its federal counterpart, the Fourth Amendment. Therefore, Grayson has failed to establish that he was prejudiced by his trial counsel's failure to raise an argument under the Indiana

Constitution, and his claim for ineffective assistance of counsel fails the prejudice prong of *Strickland* and thus, as a whole. *See French*, 778 N.E.2d at 824 (Ind. 2002).

[20] For all of these reasons, we conclude that the post-conviction court did not err in denying Grayson's petition for post-conviction relief.

[21] Affirmed.

Riley, J., and May, J., concur.