# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 27 2018, 6:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Victoria L. Bailey
Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Lee M. Stoy, Jr.
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael L. Elliott, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 27, 2018 <br><br> Court of Appeals Case No. 18A-CR-284 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia A. Gooden, Judge <br><br> Trial Court Cause Nos. 49G21-1702-F2-5794 49G21-1409-F2-45627 |

**Kirsch, Judge.**

After a bench trial, Michael L. Elliott was convicted of unlawful possession of a firearm by a serious violent felon,[1] a Level 4 felony, possession of cocaine,[2] a Level 4 felony, and possession of marijuana,[3] a Class A misdemeanor. He was sentenced to eight years, with three years suspended. On appeal, Elliott raises two issues, which we consolidate and restate as whether the trial court abused its discretion when it admitted evidence seized by the police after he was stopped for suspected drug activity in violation of his rights under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution.

We affirm.

## Facts and Procedural History

Officers Dane Elkins and Bryan Zotz investigated narcotics complaints for the north district of the Indianapolis Metropolitan Police District. *Tr. Vol. II* at 6, 55. Officer Zotz attended basic narcotics training and had investigated more than 100 drug cases during his career. *Id.* at 228, 232. Officer Elkins began narcotics work in 2010. *Id.* at 55. He had patrolled the neighborhood that included Nicholas Avenue his entire career and knew the area as one plagued

---

[1] *See* Ind. Code § 35-47-4-5(c).

[2] *See* Ind. Code § 35-48-4-6(a).

[3] *See* Ind. Code § 35-48-4-11(a)(1).

by robberies, shootings, and other narcotics-related crimes, which made it one of the most dangerous neighborhoods in the state. *Id.* at 8, 60.

[4]    On the evening of February 7, 2017, Officers Elkins and Zotz were working undercover, driving an old blue pickup truck and wearing flannel jackets over their shirts. *Id.* at 88, 200, 230. Just before midnight, they began surveilling 3245 Nicholas Avenue after receiving a complaint of narcotics activity. *Id.* at 60, 181-83. They parked on the east side of Nicholas Avenue, right in front of the home, looking north. *Id.* at 9, 11, 57, 230. Although they observed no drug-related activity at the address, they did notice suspicious behavior at 3255 Nicholas Avenue – about two houses north -- that was consistent with the narcotics trade. *Id.* at 11-15; 183, 231. They saw two cars pull up, and people from the cars enter the home for only a few minutes before leaving. *Id.* at 186. Officer Elkins saw a man go into the house with grocery bags, remain inside for about eight minutes, and then leave without the bags. *Id.* at 184. Everyone the officers observed appeared to enter and leave the house through the door on the north side. *Id.* at 181-84. However, the officers could not see people walk in and out of the door itself because the door was not within their line of sight. *Id.* at 16, 19.

[5]    Thirty minutes later, the officers saw Elliott walk the same path as those who had visited the home earlier. *Id.* at 187, 236. They did not actually see Elliott enter or exit the house, but Elliott came from the same area of the house and walked the same route as those who had exited earlier. *Id.* at 16, 18, 42, 67, 187, 236. After walking away from the house, Elliott walked directly toward

the officers. *Id.* at 188, 237. He was carrying something in his right hand and shopping bags in his left hand. *Id.* 188, 236.

[6]  Because it was dark, neither officer could identify the object in Elliott's right hand, but Officer Zotz thought it looked like a gun. *Id.* at 188, 236. When Elliott was about ten feet from the truck, Officer Elkins turned on the headlights, revealing that Elliott was indeed carrying a gun. *Id.* at 188. The gun was pointed down, but Elliott held it in such a manner that he could raise and fire it quickly. *Id.* at 199. The officers exited the truck, drew their weapons, and ordered Elliott to drop his gun and get on the ground. *Id.* at 188-89. Elliott complied.

[7]  Sergeant Anthony McLemore arrived to help Officers Elkins and Zotz. *Tr. Vol. III* at 15, 16. He handcuffed Elliott and performed a pat down search. He smelled raw marijuana and found cocaine, marijuana, and $2,084 in cash. *Tr. Vol. III* at 19-20; 23-24.

[8]  Elliott was charged with dealing cocaine, a Level 2 felony, unlawful possession of a firearm by a serious violent felon, a Level 4 felony, possession of cocaine, a Level 4 felony, dealing in marijuana with a prior conviction, a Level 6 felony, and possession of marijuana, a Class A misdemeanor. *Appellant's App. Vol. II* at 123. Elliott filed a motion to suppress, alleging that the officers violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. *Id.* at 179. The trial court

denied the motion. The State dismissed the possession of marijuana charge prior to trial. *Id.* at 131.

[9] At trial, Elliott renewed his objection to the officers' stopping him, claiming that the officers violated his rights under the federal and state constitutions. *Tr. Vol. II* at 196. He testified that there was an innocent explanation for why he was in an area of apparent drug dealing, claiming that he was returning home from a friend's home that is next door to 3255 Nicholas Avenue. *Id.* at 129-31; 134. Elliott testified that he walked through the tree line that separated his friend's home from 3255 Nicholas Avenue and did so because that was the most direct path to his house further south on Nicholas Avenue. *Id.* at 130-31.

[10] The trial court denied Elliott's objection and found that the officers had reasonable suspicion that Elliott was engaged in criminal activity because the events occurred late at night in a high crime area and that the officers observed Elliott come from a suspected drug house while holding a gun. *Tr. Vol. III* at 30. The trial court acquitted Elliott of dealing cocaine but found him guilty of unlawful possession of a firearm by a serious violent felon, possession of cocaine, and possession of marijuana. Elliott was sentenced to an aggregate sentence of eight years, with three years suspended. *Id.* at 135. Elliott now appeals.

# Discussion and Decision

## I. Fourth Amendment

[11] Elliott argues that the officers lacked reasonable suspicion that he was involved in criminal activity. *Appellant's Br.* at 25, 27. Elliott argues that the only reason the officers stopped him was because he was walking toward them while carrying a gun, which he correctly observes is not a *per se* violation of the law. *Id.* Elliott also proffers an "innocent" explanation for his behavior: "He was in his own neighborhood, walking home from a friend's house." *Id.*

[12] Because Elliott appeals from a completed trial, we review the trial court's evidentiary ruling for an abuse of discretion. *See Grayson v. State*, 52 N.E.3d 24, 26 (Ind. Ct. App. 2016). An abuse of discretion occurs only when admission of evidence is clearly against the logic and effect of the facts and circumstances, and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). We will not reweigh the evidence, and we resolve any conflicts in the evidence in favor of the trial court's ruling. *See J.G. v. State*, 93 N.E.3d 1112, 1119 (Ind. Ct. App. 2018), *trans. denied*. When the challenge to the trial court's ruling is premised on a constitutional violation, the issue is reviewed *de novo* because it raises a question of law. *Pinner v. State*, 74 N.E.3d 226, 229 (Ind. 2017).

[13] The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures. *Grayson*, 52 N.E.3d at 27. Police may stop an individual for investigatory purposes if, based upon specific,

articulable facts, the officer has reasonable suspicion that criminal activity may be afoot. *Pinner*, 74 N.E.3d at 229 (citing *Terry v. Ohio*, 293 U.S. 1, 30 (1968)). This analysis considers the totality of the circumstances because facts that appear innocent when viewed in isolation may, taken together, create reasonable suspicion of criminal activity. *Grayson*, 52 N.E.3d at 27*; Polson v. State*, 49 N.E.3d 186, 190 (Ind. Ct. App. 2015).

[14] This standard is satisfied when the facts and the reasonable inferences drawn therefrom would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Ross v. State*, 844 N.E.2d 537, 541 (Ind. Ct. App. 2006). Whether detention of a suspect violates the Fourth Amendment is evaluated by an objective standard, not the subjective motives or perceptions of law enforcement officers. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); *compare Stevens v. State*, 701 N.E.2d 277, 280 (Ind. Ct. App. 1998) and *Roberts v. State*, 599 N.E.2d 595, 598 (Ind. 1992) (both stating that probable cause to arrest may exist even though an officer's subjective evaluation says otherwise).

[15] Although presence in a high crime area on its own is insufficient to support a finding of reasonable suspicion, officers are not required to ignore the location in determining whether to further investigate. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind. Ct. App. 2002). Officers may also consider the time of day when deciding if reasonable suspicion exists. *See Johnson v. State*, 659 N.E.2d 116, 119 (Ind. 1995)

("Reasonable suspicion is more easily attained at 2:15 a.m. in a high crime area").

[16] Here, the totality of the circumstances created reasonable suspicion that Elliott was engaged in criminal activity, and the stop and seizure did not violate his rights under the Fourth Amendment. Officers Elkins and Zotz were trained, experienced narcotics officers. They were familiar with the high crime rate in the neighborhood, one of the state's most dangerous. They observed Elliott in the neighborhood, late at night, walking in the same area where others, minutes before, had been behaving in ways consistent with drug dealing. As he left that area, Elliott walked directly toward the officers' truck, carrying a gun, and coming within ten feet of the truck before the officers finally confronted Elliott. Such facts established reasonable suspicion that Elliott was engaging in criminal behavior, and the trial court did not abuse its discretion in denying Elliott's request to exclude the evidence from trial.

[17] Reasonable suspicion is determined by an objective standard and not by the subjection perceptions of officers. This principle overrides Elliott's claim that there was no reasonable suspicion because Officer Elkins testified that he did not suspect that Elliott was involved in criminal activity. *Tr. Vol. II* at 193. The most reasonable interpretation of Officer Elkins's testimony is that while Elliott's walking toward the truck while carrying a gun, standing alone, did not create reasonable suspicion, the facts *in toto* did create reasonable suspicion. Guided by an objective standard, we find that an ordinarily prudent person looking at all the facts would conclude that reasonable suspicion existed. *See*

*Ross*, 844 N.E.2d at 541. The trial court did not abuse its discretion when it allowed the evidence from the officers' stop of Elliott to be admitted into evidence.

## II.  Article I, Section 11

[18]  Elliott also argues that the stop was illegal under the Indiana Constitution because the degree of concern that Elliott had committed a crime was low. *See Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). He claims the degree of intrusion was great because even though he was engaged in innocent activity, the officers drew their weapons on him, ordered him to the ground, handcuffed him, and searched him. *See id*. He contends the needs for law enforcement to detain him were low because by walking toward officers while carrying a gun, he was engaged in innocent behavior. *See id*.

[19]  Although the language of Article I, Section 11 tracks the language of the Fourth Amendment, the primary focus is on the reasonableness of police conduct under the totality of the circumstances. *Litchfield*, 824 N.E.2d at 359. Therefore, we balance "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id*. at 361.

[20]  The reasonableness inquiry focuses not only on personal privacy but also on safety, security, and protection from crime. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). The Indiana Constitution was adopted to the end that "justice

be established, public order maintained, and liberty perpetuated." Ind. Const. preamble. Article 1 of the Bill of Rights declares that government is "instituted for [the people's] peace, safety, and well-being." Ind. Const. art. 1, § 1. Therefore, when government intrusion is challenged under Section 11, reasonableness under the totality of circumstances may include consideration of police officer safety. *Mitchell*, 745 N.E.2d at 786.

[21] Here, the officers had a significant degree of concern. They observed Elliott, late at night, in the same area as others who appeared to be dealing drugs, in one of the state's most dangerous neighborhoods, carrying a gun, and walking directly toward them. The officers' training and experience allowed them to conclude that the degree of concern was high. *See Austin v. State*, 997 N.E.2d 1027, 1035 (Ind. 2013) (concluding that the degree of concern was significant where the defendant's behaviors were potential indicators of a drug smuggling operation, especially to officers familiar with the practices of drug dealers).

[22] While the degree of intrusion the officers used when detaining Elliott was not minimal, *see Jacobs v. State*, 76 N.E.3d 846, 852 (Ind. 2017), the degree of intrusion was not excessive because reasonableness also considers officer safety. *See Mitchell*, 745 N.E.2d at 787. The officers said they were afraid that Elliott was going to rob or shoot them. *Tr. Vol. II* at 52, 75, 198, 239. Elliott was carrying a gun, which he held in a way that would let him raise and fire it quickly, and the officers acted prudently in detaining Elliott, making the degree of intrusion reasonable. *Cf. Shotts v. State*, 925 N.E.2d 719, 726-27 (Ind. 2010) (degree of intrusion from arrest and incarceration was strong but arrest was

necessary and intrusion reasonable considering needs of law enforcement and governmental interests at stake).

[23] The need of the officers to stop Elliott was also high. Officers have a duty to deter crime and intercept criminal activity. Accordingly, in balancing the degree of concern that Elliott was committing a crime, the degree of intrusion on Elliott, and the extent of law enforcement needs, we conclude that the stop of Elliott was reasonable under the Indiana Constitution. *See Litchfield*, 824 N.E.2d at 361.

[25] Affirmed.

Vaidik, C.J., and Riley, J., concur.