# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-1376

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TERRELL ARNOLD, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Northern District of Indiana, Hammond Division.
No. 2:02-CR-66—**Rudy Lozano**, *Judge.*

_____

ARGUED MARCH 2, 2004—DECIDED OCTOBER 4, 2004
PUBLISHED NOVEMBER 2, 2004[*]

_____

Before CUDAHY, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Terrell Arnold, Jr., pleaded guilty
to possession of a firearm by a felon under 18 U.S.C.
§ 922(g)(1) pursuant to a conditional plea agreement. Under
the plea agreement, he reserved his right to challenge on
appeal the district court's denial of his motion to suppress

---

[*] This decision was initially released on October 4, 2004, as an
unpublished order. By the court's own motion, it is being reissued
as a published opinion.

under the Fourth Amendment evidence seized during the search of his car. Arnold contends that the police officer at the scene, Officer Shawn Ford, exceeded the scope of a protective search when after a traffic stop he pulled down the armrest in the back seat, which opened into the trunk, and found a loaded revolver. Arnold also argues that the officer's actions cannot alternatively be characterized as part of a valid inventory search. Because we conclude that the search did not exceed the bounds of a protective search, we affirm the district court's judgment.

# I

Officer Ford of the Hammond Police Department testified at the suppression hearing that he was patrolling Michigan Street on the night of January 25, 2002, when he spotted Arnold driving a four-door Pontiac Bonneville with a burned-out headlight. Arnold was the sole occupant of the vehicle. Noticing the burned-out headlight, Officer Ford followed the Bonneville. After observing the Bonneville swerve off and back onto the road, Officer Ford initiated a traffic stop.

Officer Ford put on his siren and signaled for the Bonneville to pull over to the side of the road, and Arnold immediately obeyed. Officer Ford then pulled his car behind Arnold's, illuminating the inside of the Bonneville with his spotlight. After Officer Ford observed Arnold turn around to look back at him, Arnold then wormed his way between the passenger and the driver's seats into the back seat. Officer Ford testified that Arnold appeared to have been either retrieving or placing something in the back seat, although Officer Ford could not see below Arnold's shoulders. Arnold then returned to the driver's seat.

After observing Arnold's unusual action, Officer Ford left his patrol car and approached the Bonneville. Officer Ford asked Arnold to step out of the car. He also asked whether Arnold had a gun; Arnold said no. Officer Ford conducted a

pat-down because he feared that Arnold had retrieved a weapon from the back seat, but the pat-down produced no weapon. Officer Ford then placed Arnold in the back seat of the patrol car so that he could ensure that the traffic stop was completed safely. He noticed that Arnold appeared very nervous and was sweating "a little bit." On the other hand, Arnold was cooperative and was neither belligerent nor smelled of alcohol. A driver's license check revealed that Arnold had only a learner's permit and needed to be accompanied by a licensed driver. In Indiana an officer may write a citation for driving on a learner's permit without a licensed driver and request that the vehicle be towed, which Officer Ford decided to do.

Before towing the vehicle, Officer Ford searched it. He offered two reasons for the search: first, he needed to ensure that there were no weapons in the open spaces of the car that could be stolen or would endanger the towing personnel, and second, Arnold's unusual actions gave him "a lot of concern for what might be in the vehicle."

Beginning his search in the back seat, Officer Ford observed that the car contained a middle armrest. From experience, the officer knew that the area behind the armrest opened directly into the trunk. Officer Ford pulled the armrest down and discovered a loaded handgun that was visible in the immediate space of the trunk. Officer Ford announced his discovery to another officer, who had arrived on the scene to assist. After asking whether Arnold had a permit for the gun and receiving a negative response, Officer Ford arrested him for carrying a handgun without a permit.

Charged with possession of a firearm by a felon, Arnold responded with a motion to suppress the handgun. He argued that the officer did not have reasonable suspicion to search the car, and in any event he exceeded the scope of a protective search. Furthermore, Arnold contended that the officer did not conduct a permissible inventory search

because the initial decision to impound the vehicle was not pursuant to any established policy or routine. The district court held an evidentiary hearing and determined that the search had been permissible under the Fourth Amendment. The court reasoned that the totality of the circumstances— Arnold's unusual action of clambering into the back seat, the reasonable inference that Arnold may have been hiding or retrieving a weapon, and his nervous demeanor—provided the officer with reasonable suspicion to search the car. Relying upon *United States v. Veras*, 51 F.3d 1365 (7th Cir. 1995), which involved a search incident to arrest of a built-in back seat compartment, the court held that Arnold's movement of reaching into the back seat justified the scope of the officer's search. Hence, the court did not reach the alternative "inventory search" argument.

## II

On appeal Arnold first argues that the search exceeded the scope of a protective search under *Michigan v. Long*, 463 U.S. 1032 (1983), although he concedes that Officer Ford had reasonable suspicion for conducting some kind of search. According to Arnold, *Long* flatly prohibits searches of trunks; therefore, Officer Ford, by accessing the trunk from behind the armrest in the back seat of the passenger compartment, performed an illegal search. Arnold also asserts that the district court erroneously relied upon *Veras* in denying his motion to suppress because, he claims, a vehicle search incident to arrest is broader than a search based on reasonable suspicion.

An officer with a reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant. *Long*, 463 U.S. at 1049; *United States v. Brown*, 133 F.3d 993, 998 (7th Cir. 1998). Such a search must be confined to "those areas

in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049; see *United States v. Mancillas*, 183 F.3d 682, 699 (7th Cir. 1999).

The Supreme Court in *Long* defined the scope of a permissible protective search by borrowing the standard for vehicle searches incident to arrest established in *New York v. Belton*, 453 U.S. 454 (1981). See *Long*, 463 U.S. at 1049 & n.14. In *Belton* the Court held that an officer may conduct a vehicle search incident to arrest limited to the passenger compartment both to protect the officer and to preserve evidence. *Belton*, 453 U.S. at 460; see also *Thornton v. United States*, 124 S. Ct. 2127, 2131 (2004). Thus, the difference between a search under *Belton* and one under *Long* is simply the rationale for conducting it, not its physical boundaries. *Long*, 463 U.S. at 1049 & n.14; *cf. United States v. Cervantes*, 19 F.3d 1151, 1153 (7th Cir. 1994) (citing both *Long* and *Belton* for proposition that investigatory search entitles officer to look into accessible, closed compartments of a car for weapons). Although the general search area covered by *Belton* and *Long* is the same, the limited rationale for permitting a search under *Long*—safety concerns—constrains an officer to search only the locations that may contain a weapon and to which the motorist may have access. *United States v. Holifield*, 956 F.2d 665, 669 (7th Cir. 1992). Hence, assuming that an officer limits his search to those areas, the boundaries of the passenger compartment under *Belton* apply equally to the scope of a search under *Long*.

Although no court seems to have addressed the specific problem of a trunk that is readily accessible from inside the passenger compartment, we see no reason to distinguish this accessible area from any other. We have already held that a secret compartment built into the back seat of a vehicle is within the scope of a search incident to arrest, *Veras*, 51 F.3d at 1372, and that locked glove compartments are within the boundaries of searches under *Long*, *Holifield*, 956 F.2d at 668-69. Other circuits have held that a search under *Belton*

encompasses cargo spaces of sports utility vehicles, hatchbacks, and station wagons. See *United States v. Oguin-Rivera*, 168 F.3d 1203, 1205-07 (10th Cir. 1999) (covered cargo area of SUV was accessible from inside vehicle and was thus part of passenger compartment); *United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996) (hatchback area is searchable as part of passenger compartment); *United States v. Doward*, 41 F.3d 789, 793-94 (1st Cir. 1994) (same); *United States v. Pino*, 855 F.2d 357, 364 (6th Cir. 1988) (cargo area of mid-sized station wagon was within passenger compartment); *United States v. Russell*, 670 F.2d 323, 327 (D.C. Cir. 1982) (hatchback area is within "lunging distance"). In analyzing whether these searches were permissible, these courts considered whether an item located in the area in question was generally, "even if not inevitably," within reach. *Belton*, 453 U.S. at 460; see *Doward*, 41 F.3d at 794.

In this case Officer Ford had reasonable suspicion that Arnold may have retrieved or concealed a weapon based on his unusual movements. See *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992) (reasonable suspicion to search area that was focus of defendant's furtive gesture); *United States v. Nash*, 876 F.2d 1359, 1361 (7th Cir. 1989). Consistent with this belief, Officer Ford properly focused his search on the location into which Arnold had climbed—the back seat—and the areas immediately accessible to Arnold while he was there. See *United States v. Evans*, 994 F.2d 317, 322 (7th Cir. 1993) (search under *Long*).

That the officer reached into the trunk while he was inside the car, by pulling down the armrest in the back seat, does not mean that his search automatically exceeded the boundaries delineated in *Long*. An officer armed solely with reasonable suspicion may not search the trunk of a vehicle when the motorist would not have been able to reach a weapon located there, *Valance v. Wisel*, 110 F.3d 1269, 1278 (7th Cir. 1997). Here, however, the area behind the armrest that opened into the trunk was generally accessible from the

passenger compartment, see *Holifield*, 956 F.2d at 669 (searches under *Long* should be directed to locations that may contain a weapon and "to which the suspect may have access"). Just as if the gun had been behind the back seat in a hatchback or in the covered cargo area of an SUV, Arnold could have gained immediate access to it through the armrest, even though the weapon was technically located in the usually protected realm of the trunk. Taking into account the purpose of the officer's search, it seems likely that in no more time than it would take a motorist to retrieve a weapon from a locked glove compartment, Arnold could have reached the handgun. Officer Ford's search of the trunk area behind the armrest did not exceed the permissible scope of a search under *Long*.

Arnold also argues that Officer Ford was not justified in conducting the search because the officer had no intention of allowing Arnold to reenter the vehicle with only a learner's permit. Arnold fails to acknowledge, however, that Officer Ford may have permitted him to gather items from the car before leaving the scene even if the officer would not have permitted him to drive the vehicle. This argument also overlooks the possibility that Arnold, who sat unhandcuffed in the back of the patrol car, could have broken away from Officer Ford's control. *See Long*, 463 U.S. at 1051; *Holifield*, 956 F.2d at 669.

Under the circumstances, we have no occasion to address the government's plain view argument, which it failed to present before the district court and thus waived. Similarly, because we have found this search justified under *Long*, we have no need to address the government's effort to justify the search as a valid inventory search.

The judgment of the district court is AFFIRMED.

**A true Copy:**

**Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*