In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 18-1753

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRAVIS S. VACCARO,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 17-CR-84-JPS — **J.P. Stadtmueller**, *Judge.*

———————————

ARGUED DECEMBER 11, 2018 — DECIDED FEBRUARY 7, 2019

———————————

Before WOOD, *Chief Judge*, and RIPPLE, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Travis Vaccaro entered a conditional guilty plea to possessing a firearm as a felon, 18 U.S.C. § 922(g), preserving his right to appeal the denial of his motion to suppress the gun. Vaccaro contests both the pat-down search that occurred seconds after police officers pulled over his car and the search of the car that yielded the gun. The pat-down was lawful under *Terry v. Ohio*, 392 U.S. 1 (1968). The

sweep of the car, which the district court upheld under *Michigan v. Long*, 463 U.S. 1032 (1983), is a closer call, but we conclude that it too was permissible. Accordingly, we affirm.

Our summary of the facts is taken from an evidentiary hearing on Vaccaro's motion to suppress. Milwaukee police officers Aaron Frantal and Matthew Tracy stopped Vaccaro for running a red light. Officer Frantal testified that Vaccaro stopped his car and made a "very ferocious move" by "bending at the waist." Vaccaro then leaned toward the passenger seat and "made another aggressive move with his entire top torso and both arms into the back seat of the vehicle." Officer Tracy added that he saw Vaccaro "double over bending at the waist" and then reach toward the passenger side of the car. Officer Frantal testified that Vaccaro's movements took under five seconds. Afraid that Vaccaro might be trying to "gain control of something from the back seat," Officer Frantal drew his gun and ordered Vaccaro out of his car. The officers immediately handcuffed Vaccaro, and Officer Frantal patted him down.

Meanwhile, Officer Tracy asked Vaccaro questions about his movements. Vaccaro expressed frustration to the officers and mentioned that "people are trying to kill me." Vaccaro also said that he merely "took [his] coat off" when he pulled over. After saying that he was going to search the car, Officer Tracy asked Vaccaro seven times whether there was a gun in the car. Vaccaro responded once to reiterate that someone was trying to kill him and another time to say "I don't have anything." Officer Tracy added that Vaccaro appeared to be "extremely nervous" and in a "real amped-up state," which contributed to the officer's belief that Vaccaro was under the influence of drugs.

As Officer Tracy questioned Vaccaro, Officer Frantal found a GPS monitor on Vaccaro's ankle. Vaccaro confirmed that he was on supervision for "false imprisonment," which the officers understood to be a felony. Officer Frantal did not discover a weapon during the frisk. But both officers testified that they noticed a rifle case in the backseat. Neither officer said anything, they testified, for fear of their safety; they did not want to alert an "agitated" Vaccaro that they had seen the case.

The officers then locked Vaccaro, still handcuffed, in the backseat of their squad car. Officer Frantal testified that Vaccaro "did not appear to be fully stable" as he was led to the car. Officer Frantal called in the traffic violation to dispatch, which drew back-up officers to the scene.

Meanwhile, Officer Tracy returned to Vaccaro's car and began searching the front seats. Officer Frantal then approached the vehicle. He soon remarked that he saw a rifle case in the backseat. The officers then removed a coat on top of the rifle case and eventually confirmed that a rifle was inside it.

The magistrate judge recommended that the district court deny Vaccaro's motion to suppress. She credited the officers' testimony that Vaccaro had made furtive movements because Vaccaro had admitted to taking off his jacket; therefore, she said, the officers had reasonable suspicion to frisk Vaccaro for weapons. But she discredited the officers' testimony that they had seen a rifle case in the back of Vaccaro's car *before* locking him in the squad car. The legality of the search therefore depended on whether Vaccaro's furtive gestures provided the officers with reasonable suspicion to search the passenger

compartment of the car in addition to Vaccaro's person. She concluded that they did.

Vaccaro objected to the magistrate judge's report and recommendation, arguing that the immediate frisk was not justified by reasonable suspicion and that the search of the car was not a lawful protective search under *Long*. The government argued that both the frisk and car search were reasonable. Vaccaro's furtive movements justified the pat-down search, the government said, and locking Vaccaro in the squad car before the vehicle search enabled the officers to "avert[] a calamitous and explosive event."

The district judge sided with the government and denied Vaccaro's motion to suppress. The judge accepted the magistrate judge's findings of fact and discredited the officers' testimony that they had observed the rifle case in the backseat before they searched the car. But Vaccaro's furtive movements provided the officers with reasonable suspicion that he had "potentially armed himself or concealed a firearm," which warranted a protective frisk. The district judge also concluded that the vehicle search was reasonable under *Long*. Although Vaccaro was handcuffed and locked in a squad car during the search, he was not under arrest and could still be "dangerous" or gain "immediate access" to weapons. While the officers' "stated bases for their suspicion of dangerousness … are few," the judge observed, he was "constrained" to find that the officers had reasonable suspicion that Vaccaro was dangerous based on his "furtive movements," the "relatively late" time of the stop, and the officers' belief that Vaccaro was on drugs. Citing *United States v. Arnold*, 388 F.3d 237 (7th Cir. 2004), the judge further explained that, had "the traffic stop resulted only in the issuance of a citation for running a red

light, Vaccaro would have been permitted to re-enter his vehicle."

Vaccaro then conditionally pleaded guilty to knowingly possessing a firearm as a felon. 18 U.S.C. § 922(g). He expressly reserved the right to challenge the denial of his motion to suppress.

On appeal, Vaccaro renews his challenge to the pat-down frisk and to the search of his car. We review the district court's underlying factual findings for clear error, and we review de novo the district court's legal conclusions, including its determinations of reasonable suspicion. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Ruiz*, 785 F.3d 1134, 1140–41 (7th Cir. 2015).

Vaccaro contends that the district court mistakenly credited the officers' testimony that he made furtive movements before exiting his car. This argument can be dispatched quickly. Vaccaro protests that because the officers lied about seeing the rifle case before locking him in the squad car, they were also incorrect (or untruthful) about his movements. But the district court may credit all or part of a witness's testimony, especially when there is more than one permissible reading of the evidence. *See United States v. McGraw*, 571 F.3d 624, 629 (7th Cir. 2009). And although Vaccaro maintains that the officers' views through the rear window were obstructed by the headrests and a temporary license card, the judge credited the officers' testimony about the movements they observed, bolstered by Vaccaro's own admission that he took off his coat when he was pulled over. In light of Vaccaro's admission that he was indeed moving around, we are not left with a "definite and firm conviction" that the district court mistakenly credited the officers' testimony. *See United States v.*

*Thurman*, 889 F.3d 356, 363–64 (7th Cir. 2018) (finding no clear error when court faced with "he said versus they said" situation).

Because Vaccaro cannot show that the district court clearly erred in finding that he made furtive movements before leaving the car, he cannot show that the pat-down was unlawful. Vaccaro's movements, including bending forward at the waist and reaching toward the passenger and rear seats, reasonably suggested that he could be reaching for or concealing a weapon. *See United States v. Evans*, 994 F.2d 317, 321 (7th Cir. 1993); *United States v. Denney*, 771 F.2d 318, 322 (7th Cir. 1985). Moreover, Vaccaro appeared to be "having difficulty with something that the officer could not see," so the officers had reasonable suspicion to order him out of the car and to perform a pat-down search. *See United States v. Hendricks*, 319 F.3d 993, 1004 (7th Cir. 2003). Vaccaro offered an innocent explanation for his movements, but an officer need not be absolutely certain that a suspect is armed before conducting a protective pat-down. *See Terry*, 392 U.S. at 27; *United States v. Ford*, 872 F.3d 412, 415 (7th Cir. 2017).

Vaccaro also protests that the frisk was unreasonable because the officers handcuffed him unnecessarily. Handcuffing a suspect during a pat-down search for weapons should be the rare case. *See United States v. Smith*, 3 F.3d 1088, 1094 (7th Cir. 1993). But there is "a limited set of circumstances in which handcuffs are appropriate without converting a *Terry* stop into a full arrest," and "[c]hief among them is officer safety and the possibility of the presence of a weapon." *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017). Based on the officers' concern that Vaccaro might have armed himself with a

weapon when they observed his "aggressive" movements, handcuffing him to conduct the frisk was reasonable.

Vaccaro next argues that the district court should have suppressed the rifle because the officers discovered it during an unlawful search of his car. The government asserts that *Michigan v. Long* justified the search. The *Long* exception to the warrant requirement permits the police to search a vehicle when there are "genuine safety or evidentiary concerns." *Arizona v. Gant*, 556 U.S. 332, 347 (2009). *Long* holds: "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." 463 U.S. at 1049–50 (quoting *Terry*, 392 U.S. at 21). In applying this test, the key question is whether the search was reasonable. *See United States v. Correa*, 908 F.3d 208, 217 (7th Cir. 2018). *Long* searches are grounded in concern for officer safety, *see* 463 U.S. at 1050, so if that concern is not present, *Long* does not justify the search. *See Gant*, 556 U.S. at 338–39 (discussing how searches incident to arrest are not reasonable if concerns underlying exception to warrant requirement are absent).

*Long*'s first prong is satisfied here because the officers had reasonable suspicion to believe that Vaccaro was dangerous at the time they searched the car. In addition to Vaccaro's furtive movements, the officers suspected that Vaccaro was under the influence of drugs, which gave them greater reason to fear for their safety. *See Long*, 463 U.S. at 1050; *United States v.*

*Kenerson*, 585 F.3d 389, 392 (7th Cir. 2009). The officers also discovered that Vaccaro was on probation for "false imprisonment," and prior criminal activity is one factor that can contribute to reasonable suspicion. *See United States v. Johnson*, 427 F.3d 1053, 1057 (7th Cir. 2005).

The second prong of the *Long* inquiry requires the government to establish that the officers reasonably suspected that Vaccaro could gain "immediate control" of weapons in the vehicle. *See* 463 U.S. at 1049–50; *United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018). Vaccaro claims that he could not have immediately obtained weapons because he was handcuffed and locked in the back of a squad car. He insists that this case is controlled by *Arizona v. Gant*, in which the Supreme Court held that officer-safety concerns did not justify a search incident to the arrest of a driver who had been handcuffed and locked in the back seat of a squad car. 556 U.S. at 335. The government, on the other hand, contends that *Gant* doesn't govern because Vaccaro wasn't arrested. When a suspect is merely detained, the government argues, *United States v. Arnold* controls the *Long* inquiry. 388 F.3d 237, 241 (7th Cir. 2004).

In *Arnold*, which we decided before *Gant*, the motorist made furtive movements upon being stopped by police. 388 F.3d at 238. The officer asked him to step out of the vehicle, patted him down, and "placed [the motorist] in the back seat of the patrol car so that he could ensure that the traffic stop was completed safely." *Id.* The officer then decided to have the car towed because the defendant had been driving with a learner's permit without a licensed driver. *Id.* Before towing the vehicle, however, the officer searched it and discovered a firearm. *Id.* at 238–39. We held that officer-safety concerns

justified the search under *Long*. *Id.* at 241. This was a traffic stop, not an arrest, and the officer "may have permitted [the motorist] to gather items from the car before leaving the scene even if the officer would not have permitted him to drive the vehicle." *Id.* We also noted that while the motorist was in the back seat of the squad car, he was not handcuffed and therefore "could have broken away from [the officer's] control." *Id.*

At oral argument, we asked the government whether *Gant* limited or overruled *Arnold*, and it maintained that *Arnold* is still good law. We agree. In *Arnold*, it was reasonable to believe that the defendant, who was not under arrest, could have regained access to his vehicle. *See id*. at 238, 241; *see also Gant*, 556 U.S. at 352 (Scalia, J., concurring) ("In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed."). In *Gant*, the opposite was true: the defendants were not going to return to the vehicle because they were arrested, handcuffed, and locked in squad cars. *See* 556 U.S. at 336–37, 344. The cases therefore do not conflict: *Arnold* applies to *Terry* stops; *Gant* applies to arrests.

Thus, if Vaccaro had been under arrest, *Gant* would control. And if Vaccaro contended that he had been under arrest, we would face the difficult task of determining whether this *Terry* stop became an arrest. *See, e.g.*, *United States v. Bullock*, 632 F.3d 1004, 1016–18 (7th Cir. 2011). But Vaccaro does not argue that the officers arrested him. To the contrary, he conceded at oral argument that he had been subjected to a *Terry* stop, not an arrest, and that he would have been allowed back to his vehicle at the conclusion of his brief detention if the

officers had found no contraband.[1] Vaccaro's concession dic-
tates the disposition of this case. By admitting that he would
have been allowed to return to his car, Vaccaro conceded that
he could have gained "immediate control of weapons" inside
the vehicle. The search was therefore lawful under *Long*. 463
U.S. at 1049; *Arnold*, 388 F.3d at 241.

The judgment of the district court is AFFIRMED.

---

[1] Vaccaro also conceded that he did not argue in the district court that his
detention amounted to an arrest, rather than a *Terry* stop.