

FILED

Apr 10 2019, 6:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Tyler G. Banks
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tre Ron Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 10, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1633<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven J. Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G07-1711-CM-45409 |

**Bailey, Judge.**

# Case Summary

[1] Tre Ron Smith ("Smith") appeals his conviction of possession of a handgun, as a Class A misdemeanor,[1] following a bench trial. We address the following dispositive, restated issue: whether the trial court erroneously admitted evidence obtained following an investigatory stop.

[2] We affirm.

# Facts and Procedural History[2]

[3] On November 26, 2017, at approximately 1:15 a.m., Indianapolis Metropolitan Police Department Officer Kevin Moore ("Officer Moore") received a "shots-fired" radio run from dispatch indicating that gunshots were fired from a vehicle "in the area" of Market Street in downtown Indianapolis. Tr. at 6, 14.[3] Dispatch had received a report[4] from an anonymous caller that gunshots were fired from a silver or gray Trailblazer in that area. *Id*. The caller further noted that the vehicle had damage "all over" it. *Id*. at 11. When Officer Moore

---

[1] Ind. Code § 35-47-2-1(e).

[2] We held oral argument in this case on February 7, 2019, at Seymour High School. We thank the school for its hospitality and counsel for their advocacy.

[3] Officer Moore testified that he detained Smith at the corner of Market and Delaware Streets, Tr. at 6, because he had probable cause to believe there was a gun in the vehicle "based on the gray vehicle and the run that came out stating that there was [sic] shots fired in the area…," *id*. at 14.

[4] At trial, the State did not present a recording or transcript of the 9-1-1 call from the anonymous source.

arrived at the corner of Delaware and Market Streets soon thereafter,[5] he observed a vehicle matching the description he had received from dispatch. Officer Moore and other officers on the scene stopped the vehicle. Smith was in the driver's seat of the vehicle and there were two passengers.

[4] Based on the information from the "shots-fired" report, Officer Moore believed there was a firearm in Smith's vehicle. *Id*. at 12. Therefore, Officer Moore and other officers on the scene approached the vehicle with their guns drawn, instructed Smith and the passengers to exit the vehicle, and placed them in handcuffs while they searched the vehicle. Officer Moore saw a handgun on the driver's side floor of the vehicle in plain view. After they completed the search of the vehicle, the police read Smith a *Miranda*[6] warning and asked him if the gun belonged to him. Smith admitted that the gun was his; however, he did not have a license for it. The police arrested Smith.

[5] That same day the State charged Smith with carrying a handgun without a license, as a Class A misdemeanor. At his June 14, 2018, bench trial, Smith made an oral motion to suppress the handgun found in his vehicle on the grounds that the search violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied that motion and overruled Smith's

---

[5] Officer Moore testified that the "shots-fired run" came out at 1:15 a.m. and there were "quite a few vehicles" and people "on the street" at 1:15 a.m. Tr. at 16-17.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

subsequent objection to Officer Moore's testimony about the search. The trial court found Smith guilty as charged and sentenced him to 361 days of probation. This appeal ensued.

# Discussion and Decision

## Standard of Review

[6] Smith objected to the admission of the evidence in an oral motion to suppress at the beginning of his bench trial and renewed his objection when the State offered Officer Moore's testimony and the handgun evidence. Because Smith appeals following his conviction and is not appealing the trial court's order denying his motion to suppress, the question before us is properly framed as whether the trial court erred in admitting the evidence. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013).

> In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. [*Guilmette v. State*, 14 N.E.3d 38,] 40 n.1 (Ind. 2014)]. It also considers the evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial. *Id*. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is "clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Clark*, 994 N.E.2d at 260. But the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo. *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014).

*Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

Smith raises claims under both the federal and state constitutions. Although the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution contain textually similar language, each must be separately analyzed. *Marshall v. State*, No. 18S-CR-00464, slip op. at 5-6 (Ind. Feb. 27, 2019).

## Fourth Amendment

Smith maintains that the police violated his Fourth Amendment rights when they stopped his vehicle and, therefore, evidence found in the subsequent search of his vehicle should have been excluded at trial.[7] The Fourth Amendment prohibits warrantless searches and seizures unless the State can prove that an exception to the warrant requirement existed at the time of the search. *See, e.g.*, *Marshall*, slip op. at 6. However, police may, "without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *Edmond v. State*, 951 N.E.2d 585, 588 (Ind. Ct. App. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). "We often call these encounters *Terry* [s]tops," *Marshall*, slip op. at 6, and such a stop must be both

---

[7] Evidence obtained by an unconstitutional search and seizure is inadmissible. *Mapp v. Ohio*, 367 U.S. 643 (1961). Smith only challenges the constitutionality of the initial stop, not the subsequent search.

justified at its inception and reasonably related in scope to the circumstances which justified it at its inception, *Terry*, 392 U.S. at 18-19.

### *Justified at Inception*

[9] An anonymous tip alone is seldom sufficient to provide the reasonable suspicion required to initiate an investigatory *Terry* stop absent evidence of the reliability of the tip, such as an accurate prediction of future behavior of the suspect. *Alabama v. White*, 496 U.S. 325, 329, 332 (1990). However, the United States Supreme Court has held that, even where an anonymous tip contained no prediction of future behavior, there was nevertheless sufficient indicia of reliability to support a *Terry* stop where an anonymous caller to an emergency police number gave eyewitness knowledge of alleged dangerous activity and accurate information identifying the suspect. *Navarette v. California*, 572 U.S. 393, 399-400 (2014). In *Navarette*, the Supreme Court clarified that an anonymous tip that substantially describes publicly knowable information about a suspect but does so through a 9-1-1 emergency system—which often "allow[s] for identifying and tracing callers"—and alleges that the suspect is "contemporaneous[ly]" engaged in "a specific and dangerous" activity, provides a sufficient basis for a *Terry* stop. *See also U.S. v. Jeanes*, No. 3:16-CR-070 JD, 2016 WL 11281168, *6 (N.D. Ind. Nov. 29, 2016) (citing *U.S. v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006)) (holding that there was reasonable suspicion to conduct a *Terry* stop where an anonymous caller reported witnessing an immediate threat to public safety—i.e., a person waving a gun around on the downtown streets—and the caller provided sufficient details to allow the police

to identify the suspect); *Grayson v. State*, 52 N.E.3d 24, 29-30 (Ind. Ct. App. 2016) (noting an immediate response by police was warranted where the anonymous tipster "reported witnessing criminal conduct risking serious bodily injury to those in the immediate vicinity"), *trans. denied*.[8]

[10] In *Navarette*, the Court noted that the facts in that case were in contrast to situations in which an anonymous caller accurately describes a person and merely alleges criminal activity, without more. 572 U.S. at 399. For example, in *Florida v. J.L.*, 529 U.S. 266 (2000), an anonymous caller described a person standing at a bus stop and simply alleged that the person was carrying a gun without any explanation of how he or she knew the suspect had a gun or any expression of special familiarity with the suspect's affairs. In that situation, the police had no basis for believing "that the tipster ha[d] knowledge of concealed criminal activity." *Id*. at 272; *see also Beal v. Beller*, 847 F.3d 897, 904 (7th Cir. 2017) (holding that an anonymous tip that accurately described a location and person still lacked sufficient indicia of reliability where the caller merely asserted the suspect was selling drugs without alleging witnessing a drug sale or other further "details that corroborated the criminal aspect of the anonymous tip"). *Sellmer v. State*, 842 N.E.2d 358 (Ind. 2006), upon which the dissent relies, similarly involved a tip with accurate identifying information but only a

---

[8] In *Berry v. State*, 766 N.E.2d 805, 810 (Ind. Ct. App. 2002), *trans. denied*, we determined that there were insufficient indicia of reliability of an anonymous tip where the tipster reported witnessing a person waving a gun around in public but did not provide any predictions of the defendant's future behavior. However, we note that that case was decided before *Navarette*.

bare allegation of criminal activity and no "information that would allow the police to corroborate the caller's claim that criminal activity was afoot." 842 N.E.2d at 362.

[11] The instant case is more like *Navarette* than *J.L.* or *Sellmer*. While the anonymous caller gave no predictions of Smith's future behavior to indicate the reliability of the tip, he or she did provide the following other indicia of reliability: the call was placed to an emergency number; the caller gave a specific description of the vehicle's color and model (a gray Trailblazer); the caller gave even more specific information that the vehicle had damage "all over" it, Tr. at 11, thus distinguishing it from other gray Trailblazers that might have been in the specified location; the caller gave a statement that "gunshots were coming from that vehicle," Tr. at 9, thus indicating the caller actually witnessed the criminal activity; and the caller gave a specific location (the area of Market Street in downtown Indianapolis) where the vehicle was actually found (at the corner of Market and Delaware Streets downtown) soon after the tip was received (1:15 a.m.). The anonymous tip had sufficient indicia of reliability to provide reasonable suspicion of criminal activity justifying the *Terry* stop of Smith's vehicle at its inception.

### Reasonably Related in Scope

[12] Furthermore, the stop of Smith's vehicle was reasonably related in scope to the circumstances which justified the stop at its inception. *Terry*, 392 U.S. at 18-19. Smith contends that the stop went beyond the permissible scope of the *Terry* stop to become an arrest when the police approached him with weapons drawn,

ordered him out of the vehicle, and handcuffed him during the search of the vehicle.

[13] An investigatory *Terry* stop may be converted to an arrest depending on the totality of the circumstances. *Wilson v. State*, 96 N.E.3d 655, 658 (Ind. Ct. App. 2018) (citing *Reinhart v. State*, 930 N.E.2d 42, 46 (Ind. Ct. App. 2010)), *trans. denied*. However, "[a]s part of a valid *Terry* stop, the investigating officer is entitled to take reasonable steps to ensure his own safety, including ordering a detainee to exit the vehicle." *Reinhart*, 930 N.E.2d at 46. Moreover, although handcuffing a suspect during a search for weapons "should be the rare case[,]" there are "'a limited set of circumstances in which handcuffs are appropriate without converting a *Terry* stop into a full arrest.'" *U.S. v. Vaccaro*, No. 18-1753, 915 F.3d 431, 2019 WL 473381, *3 (7th Cir. Feb. 7, 2019) (quoting *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017)). Chief among those reasons is "'officer safety and the possibility of the presence of a weapon.'" *Id*. Thus, in *Vaccaro*, for example, given the officers' concern that Vaccaro might have armed himself with a weapon when they observed his furtive movements while he was inside the vehicle, the court held it was reasonable for the police to draw their guns, order him out of the vehicle, and handcuff him in order to conduct a pat-down search as part of a *Terry* stop. *Id*. at *1, 3; *see also Billingsley v. State*, 980 N.E.2d 402, 407-08 (Ind. Ct. App. 2012) (holding an officers' limited use of a firearm to detain a suspect is pursuant to an investigatory stop, rather than an arrest, if the totality of the circumstances before the officer at the time

demonstrate a "specific and reasonable belief" that the suspect may be armed with a weapon), *trans. denied*.

[14] Here, as already noted, the police had reasonable suspicion to believe a person or persons in the vehicle driven by Smith were shooting guns out of the vehicle and were, therefore, armed and dangerous. Consequently, the officers' actions in drawing their guns, ordering Smith and the passengers out of the vehicle, and handcuffing them while conducting the search of the vehicle were reasonable steps the officers took to ensure their safety. Those steps were reasonably related to the justification for the *Terry* stop—i.e., to investigate alleged dangerous, criminal activity involving firearms—and did not convert the *Terry* stop into an arrest. *Vaccaro*, 2019 WL 473381, at *1, 3.

## Article 1, Section 11 of the Indiana Constitution

[15] The stop of Smith was also constitutional under Article 1, Section 11 of the Indiana Constitution. Under a state constitutional analysis, we make reasonable suspicion determinations "by looking at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011) (citations and quotations omitted).

[16] As under the federal analysis, an anonymous tip is generally insufficient to provide the reasonable suspicion required to conduct a *Terry* investigative stop absent evidence of the reliability of the tip. *Id*. Such evidence may be in the form of accurate predictions of future behavior of the suspect, or other

"independent indicia of reliability." *Id*. at 1148. A tip is "deemed reliable when an individual provides specific information to police officers such as a vehicle description" and a specific location and time of day. *Id*. (quoting *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000)). Thus, in *Renzulli* our Supreme Court held that a tip had sufficient independent indicia of reliability to support a *Terry* stop—even when the tipster did not provide predictions of future behavior—where the tipster gave the color and make of the vehicle and the location where the vehicle was found soon after the tip was given. *Id*. Moreover, the Court noted that the circumstances in that case—i.e., a suspected intoxicated driver—"warranted an immediate response by the police for the safety of the general public." *Id*.; *see also Grayson*, 52 N.E.3d at 28 (noting legitimate state concerns in protecting the public from gun violence and the anonymous tipster's allegations that the suspect was waving a firearm in public "warranted an immediate response by law enforcement officers for the safety of the general public"), *trans. denied*.

[17]  This case is similar to *Renzulli*. That is, looking at the totality of the circumstances, it is clear that the anonymous tip had independent indicia of reliability even though the tipster did not predict future behavior. As noted above, the anonymous tip gave: a specific description of the vehicle's color, model, and unique, damaged condition; a statement indicating the caller witnessed criminal activity; and a specific location where the vehicle was actually found soon after the tip was received. Furthermore, the tipster's allegation was that the suspect was engaged in criminal behavior (i.e., firing a

gun out of a vehicle) that could place the public in grave danger, thus warranting an immediate response by law enforcement to ensure public safety. *Renzulli*, 958 N.E.2d at 1148; *Grayson*, 52 N.E.3d at 28. The stop of Smith did not violate his constitutional rights under Article 1, Section 11 of the Indiana Constitution.

# Conclusion

[18]     Under both the federal and state constitutions, the police had reasonable suspicion to conduct a *Terry* stop of Smith, and they did not exceed the permissible scope of such a stop. Therefore, the trial court did not err when it allowed into evidence the firearm found in the search conducted after the *Terry* stop.

[19]     Affirmed.


Najam, J., concurs.
May, J., dissents with opinion.

Tre Ron Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
18A-CR-1633

**May, Judge, dissenting.**

Because I believe the search of Smith's vehicle violated his rights against illegal search and seizure under the Fourth Amendment to the United States Constitution,[9] I respectfully dissent.

## Reasonable Suspicion

The majority opinion relies primarily on the United States Supreme Court case *Navarette v. California*, 572 U.S. 393 (2014). As the majority notes, *Navarette* "held that, even where an anonymous tip contained no prediction of future behavior, there was nevertheless sufficient indicia of reliability to support a

---

[9] Smith also argues the search violated his rights under Article 1, Section 11 of the Indiana Constitution. However, as I would hold his Fourth Amendment rights were violated, I need not address that argument. *See Reinhart v. State*, 930 N.E.2d 42, 45 n.2 (Ind. Ct. App. 2010) (when case is reversed on Fourth Amendment grounds, no state constitutional analysis required).

*Terry* stop where an anonymous caller to an emergency police number gave eyewitness knowledge of alleged dangerous activity and accurate information identifying the suspect." *Slip op.* at ¶9. However, I believe an examination of the facts distinguishes *Navarette* from the case before us.

In *Navarette*, the Court found the following scenario to contain sufficient information from which a traffic stop could be justified based on an anonymous call:

> The Humboldt County dispatcher relayed a tip from a 911 caller, which the Mendocino County team recorded as follows: "'Showing southbound Highway 1 at mile marker 88, Silver Ford pickup. Plate of 8-David-94925. Ran the reporting party off the roadway and was last seen approximately five [minutes] ago.'" The Mendocino County team then broadcast that information to CHP [California Highway Patrol] officers at 3:47 p.m.

*Navarette*, 572 U.S. at 395 (internal citations omitted).

Approximately fifteen minutes after the dispatch, a CHP officer observed a truck matching that description and initiated a traffic stop. When the officer approached the vehicle, he noted an odor of marijuana. A search of the truck revealed thirty pounds of marijuana. The defendants were charged with transporting marijuana and moved to suppress the evidence from the stop, arguing the officer lacked reasonable suspicion of criminal activity as required to effectuate a traffic stop. The motion to suppress was denied. *Id.* at 396.

In examining whether the officer had reasonable suspicion, the *Navarette* Court examined the reliability of the anonymous call based on three factors: (1) the reliability of the information given; (2) the amount of time which passed from the call to the location of the vehicle; and (3) the use of a 911 system. *Id.* at 398-401. The Court determined the information given by the anonymous caller was reliable because she gave the type of vehicle, the color of the vehicle, and the license plate number of the vehicle that ran her off the road, which "necessarily implies that the informant knows the other car was driven dangerously." *Id.* at 399. The contemporaneous nature of the call also bolstered the reliability of the anonymous tip, as the Court observed:

> Police confirmed the truck's location near mile marker 69 (roughly 19 highway miles south of the location reported in the 911 call) at 4:00 p.m. (roughly 18 minutes after the 911 call). That timeline of events suggests that the caller reported the incident soon after she was run off the road. That sort of contemporaneous report has long been treated as especially reliable.

*Id.*

Finally, the Court recognized the ability to trace and identify anonymous callers through the 911 system. *Id.* at 400-1. The Court reasoned the ability to track 911 calls provided "safeguards against making false reports with immunity[,]" *id.* at 1689, which was a concern in earlier cases. The Court stated: "As this

case illustrates, see n. 1[10] *supra*, 911 calls can be recorded, which provides victims with an opportunity to identify the false tipster's voice and subject him to prosecution[.]" *Id.* at 400 (footnote added). After considering the factors enumerated, the *Navarette* Court concluded there existed sufficient reasonable suspicion to conduct a Terry stop of Navarette's vehicle, but acknowledged it was a "close case." *Id.* at 404 (quoting *Alabama v. White*, 496 U.S. 325, 332 (1990)).

[26]    A "close case" also exists here; however, I do not believe the information given by the anonymous caller rose to the same level of reliability that the *Navarette* Court found sufficient to establish reasonable suspicion. Officer Moore testified he received a dispatch at approximately 1:15 a.m. on November 26, 2017, indicating an anonymous caller reported "shots-fired" from a "gray or silver TrailBlazer . . . [with] moderate damage on it. . . .in the area" of Market Street in downtown Indianapolis. (Tr. Vol. II at 7, 14.) Officer Moore testified the dispatch indicated the Trailblazer had damage "all over" it. (*Id.* at 11.) Unlike the information given in *Navarette*, Officer Moore did not testify the dispatch gave him a license plate number and Officer Moore did not indicate when the anonymous call came in to dispatch.

---

[10] Footnote 1 in the *Navarette* opinion indicates that although there existed a recording of the 911 call in which the tipster identified herself, the recording was not admitted into evidence because neither the tipster or the 911 dispatcher testified. Thus, the "prosecution proceeded to treat the tip as anonymous, and the lower courts followed suit." *Navarette*, 592 U.S. at 396 n.1.

Further, what seems to distinguish *Navarette* from earlier cases is the Court's conclusion that anonymous information gleaned from a 911 call was more reliable because the caller could be traced and identified if need be. *Navarette*, 572 U.S. at 400-1. However, information gleaned from modern 911 systems is not always inherently reliable.

For example, the 7th Circuit Court distinguished *Navarette* on that basis in *United States v. Watson*, 900 F.3d 892 (2018). The *Watson* Court considered the factors set forth in *Navarette* when analyzing an anonymous call reporting "seeing 'boys' 'playing with guns' by a 'gray and greenish Charger'" in a parking lot near the caller. *Id*. at 893. The 7th Circuit determined the anonymous tip was not sufficient to provide reasonable suspicion based on the *Navarette* factors partially because the Court felt the call was less reliable than the call in *Navarette*. The Court noted:

> First and most significantly, *Navarette's* rationale for deeming 911 calls reliable has much less force here. The Supreme Court concluded that 911 calls are more dependable because their features "provide some safeguards against making false reports with immunity." Specifically, the calls are recorded, so a victim of a false report may be able to identify the anonymous caller's voice later, and the calls can be traced back to a particular phone number and geographic location. But here, the caller borrowed a stranger's phone, limiting the usefulness of the system's tracing ability. Any phone number identified would not lead back to the caller because he had no permanent connection to the phone, and the phone's geographic location at the time of the call would be useful only so long as the caller remained near the phone. Under these circumstances, it is not obvious that the young caller

> would be worried about getting caught providing false information and therefore "think twice" before doing it.

*Id*. at 895 (internal citations omitted). The same is true here - the record does not contain information about the 911 call - whether it came from a cell phone or a landline, if the caller owned the phone from which the call came, and where the caller and the phone were when making the report.

[29] As a final point, I note the factual disparity between the case before us and one of the cases the majority cites to bolster its reliance on *Navarette*, that is, *United States v. Jeanes*, 2017 WL 74766, at *1 (N.D. Ind. Jan. 9, 2017). Most notably, in *Jeanes*, in which the Indiana District Court affirmed a traffic stop based on reasonable suspicion, the recording of the 911 call was admitted into evidence and the anonymous caller provided "'play-by-play' eyewitness commentary as she was following the subject vehicle." *Jeanes*, *slip op*. at *6. Here, it is not clear what the anonymous caller said or when the call was received. The record does not contain a transcript or recording of the 911 call. The only evidence that we are permitted to review - and all the trial court relied on for this issue - is Officer Moore's testimony, the contents of which I do not believe provide evidence of reasonable suspicion to effectuate a Terry stop.

[30] I cannot agree that an anonymous tip of shots fired from a grey SUV with moderate damage all over it somewhere near Market Street with an indeterminate time frame, unknown location of the shots, unknown location of the caller, and lack of additional information regarding the vehicle or the vehicle's occupants gave Officer Moore reasonable suspicion to stop Smith's

vehicle, order the occupants out of the vehicle at gunpoint, handcuff the occupants, move them to the rear of the car, and conduct a search of Smith's vehicle without Smith's consent.  Therefore, I respectfully dissent.