

FILED
May 09 2019, 9:08 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Davis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 9, 2019

Court of Appeals Case No.
18A-CR-2313

Appeal from the
Marion Superior Court

The Honorable
Ronnie Huerta, Magistrate

Trial Court Cause No.
49G19-1612-CM-46098

**Vaidik, Chief Judge.**

## Case Summary

[1] Kenneth Davis was pulled over for a traffic violation. During the stop, the police officer suspected that the truck was stolen because Davis had a

suspended driver's license and could not prove ownership of the truck. After the officer had Davis get out of the truck, he asked him if he had any weapons in the truck. Davis said yes. The officer then handcuffed Davis for officer safety and retrieved the gun from the truck. The officer later learned that the truck was not stolen but that Davis did not have a valid gun license. Davis was not arrested on the scene, but he was later charged with carrying a handgun without a license and driving while suspended. Davis was found guilty on both charges.

[2] Davis now appeals, arguing that the search of his truck was unlawful and that the trial court therefore erred in admitting the officer's testimony that he found a gun in the truck. We find that the limited search of the truck for the gun was lawful pursuant to *Michigan v. Long*, 463 U.S. 1032 (1983). That is, the officer reasonably believed that Davis was dangerous and might gain immediate control of the gun. We therefore affirm Davis's conviction for carrying a handgun without a license. However, because both parties agree that the evidence is insufficient to prove that Davis committed driving while suspended, we reverse that conviction and remand the case to the trial court with instructions to issue an amended sentencing order.

# Facts and Procedural History

[3] Around 2:30 p.m. on November 1, 2016, Indianapolis Metropolitan Police Department Officer Christopher Morgan pulled over Davis for failing to signal. Officer Morgan approached Davis's truck and asked for his driver's license and

registration. Davis gave Officer Morgan his driver's license but said he "didn't have any paperwork" for the truck because he was in the process of buying it. Tr. p. 9. Officer Morgan returned to his patrol car to run Davis's driver's license and "the vehicle's information." *Id.* Officer Morgan learned that Davis's driver's license was suspended and that "the truck belonged to somebody else." *Id.* At this point, Officer Morgan became concerned that the truck "could be stolen." *Id.*

[4] Officer Morgan returned to the truck and asked Davis to step out because he "didn't know whose vehicle it was" and "wanted to confirm whether it was stolen." *Id.* at 13-14; *see also id.* at 11. Once Davis was outside the truck, Officer Morgan asked him "if he had any weapons in the" truck, and Davis said yes. *Id.* at 14. Officer Morgan "handcuffed [Davis] for officer safety" and took him to the rear of the truck. *Id.* Officer Morgan waited for other officers to arrive, at which point he "searched the truck for the gun." *Id.* He found a handgun (which was not in a case) on the front seat under a pile of clothes. He also found a box of .40 caliber ammunition and a couple of magazines (one of which was for a different gun). According to Indiana Code section 35-47-2-1(a), "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed." But there are exceptions, including: a person may carry a handgun without being licensed if "the person carries the handgun in a vehicle that is owned, leased, rented, or otherwise legally controlled by the person, if the handgun is: (A) unloaded; (B) not readily accessible; and (C) secured in a case." Ind. Code § 35-47-2-1(b)(3). Officer

Morgan returned to Davis at the rear of the truck, gave him *Miranda* warnings, and asked him where he purchased the gun. Davis told him "ArmsList." Tr. p. 18. Officer Morgan then asked Davis if he knew the owner of the truck, and Davis said yes. After establishing that this person owned the truck, Officer Morgan called him, and he confirmed that Davis was buying the truck from him. Officer Morgan had the owner come pick up the truck to avoid towing fees. At some point, Officer Morgan learned that Davis's gun license was "pending," meaning it had not yet been issued. *Id.* Officer Morgan confiscated the gun. Davis was not arrested at the time and was allowed to leave. Appellant's App. Vol. II p. 35.

[5] Thereafter, the State charged Davis with Class A misdemeanor carrying a handgun without a license and Class A misdemeanor driving while suspended (elevated from a Class A infraction based on a prior judgment for the same violation). At the bench trial, the State called one witness, Officer Morgan. During Officer Morgan's testimony, defense counsel moved to suppress evidence of the gun, arguing that Officer Morgan "had no reason to search th[e] truck" for officer safety because Davis was "in handcuffs at the back of the truck." Tr. p. 15. At the conclusion of the evidence, the trial court asked the parties to submit authority on the legality of the search. *Id.* at 26. Both Davis and the State submitted authority, Appellant's App. Vol. II pp. 27, 34, and the trial court reconvened two weeks later to announce its decision. Specifically, the trial court found Davis guilty of Class A misdemeanor carrying a handgun without a license. Tr. p. 36. The trial court did not discuss the charge of

driving while suspended. The court, however, later issued a sentencing order reflecting that Davis was found guilty of Class A misdemeanor carrying a handgun without a license **and** driving while suspended as an infraction (as a lesser included of the Class A misdemeanor). Appellant's App. Vol. II p. 9.

[6] Davis now appeals.

# Discussion and Decision

[7] Davis raises two issues on appeal, one of which the State concedes. That is, Davis argues that the evidence is insufficient to prove that he committed the infraction of driving while suspended because the State "did not produce any . . . evidence as to the status of [his] driver's license."[1] Appellant's Br. p. 10. The State concedes that it did not present such evidence. Accordingly, we reverse Davis's conviction for driving while suspended and remand this case to the trial court with instructions to issue an amended sentencing order.

[8] Davis next argues that the search of his truck was unlawful and that therefore the trial court erred in admitting Officer Morgan's testimony that he found a handgun in the truck. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under

---

[1] At trial, Davis objected to Officer Morgan's testimony that his driver's license was suspended on hearsay grounds because "the State hasn't provided certified BMV records to show that" his driver's license was suspended. Tr. p. 9. The trial court admitted Officer Morgan's testimony, not for the truth of the matter asserted, but to show what steps he took during the stop. *Id.* at 10. The State never introduced BMV records showing that Davis's driver's license was suspended.

the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (footnotes omitted). Among the exceptions to the warrant requirement are officer-safety searches of cars pursuant to *Michigan v. Long*, 463 U.S. 1032 (1983). *United States v. Vaccaro*, 915 F.3d 431, 436 (7th Cir. 2019). *Long* holds:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous **and** the suspect may gain immediate control of weapons.

463 U.S. at 1049-50 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)) (emphasis added). "In applying this test, the key question is whether the search was reasonable." *Vaccaro*, 915 F.3d at 436. *Long* searches are grounded in concerns for officer safety, so if that concern is not present, *Long* does not justify the search. *Id.*

[9] Here, *Long*'s first prong, a reasonable belief that the suspect is dangerous, is satisfied. Although Officer Morgan initially pulled over Davis for a traffic violation, he learned during the stop that Davis's driver's license was suspended and that he could not show ownership of the truck. This caused Officer Morgan to suspect that the truck was stolen, which would be a Level 6 felony. *See* Ind. Code § 35-43-4-2(a)(1)(B)(ii). Officer Morgan then asked Davis if he had any weapons in the truck. When Davis said yes, Officer Morgan possessed

a reasonable belief, based on specific and articulable facts, that Davis was dangerous.

[10] Davis relies on *Washington v. State*, 922 N.E.2d 109 (Ind. Ct. App. 2010), but it is readily distinguishable from this case. In *Washington*, a police officer pulled over the defendant for a traffic violation. When the officer approached the car, he asked the defendant if there were any weapons inside, and the defendant said that he had a gun under his seat and that he had a license for it. The officer removed the defendant from the car, placed him in handcuffs, and had him sit on a nearby curb. When the officer went to retrieve the gun, he found a bag of marijuana. The State charged the defendant with Class A misdemeanor possession of marijuana. The defendant filed a motion to suppress the marijuana, which the trial court denied. On interlocutory appeal, we held that the search of the defendant's car was not justified and that therefore the marijuana should have been suppressed. *Id.* at 113. We reasoned that at the time of the search, there was not an articulable basis of a legitimate concern for officer safety because the defendant "made no furtive movements, answered the officer's questions, and showed no disrespect to the officer" and because the officer "had no information that any crime or violation of law had been or was about to be committed, except for the" traffic violation. *Id.* Here, however, Officer Morgan had reason to believe that he might have discovered a felony auto theft and therefore had cause to be concerned for his safety. *Washington* does not control this case.

The second prong of the *Long* inquiry requires the State to establish that Officer Morgan reasonably suspected that Davis could gain "immediate control" of the gun in the truck. Davis argues that he could not gain immediate control of the gun because he "was restrained in handcuffs at the rear" of the truck. Appellant's Br. p. 16. If Davis had been placed under arrest, we might agree with him. *See Arizona v. Gant*, 556 U.S. 332, 335 (2009) (holding that officer-safety concerns did not justify a **search incident to the arrest** of a driver who had been handcuffed and locked in the back seat of a squad car); *Vaccaro*, 915 F.3d at 437 (clarifying that *Gant* applies to searches incident to arrest, not *Terry* stops). But Davis was not placed under arrest. He was merely detained temporarily while Officer Morgan was waiting to hear back whether the truck was stolen. Because Davis was not arrested, it was possible that he would regain access to the truck. And in fact, Officer Morgan eventually learned that the truck was not stolen, Davis was not arrested on the scene, and when the owner arrived to pick up the truck, Davis's girlfriend was with him. Tr. p. 18. Therefore, the search of the truck was lawful under *Long*, and the trial court did not err in admitting Officer Morgan's testimony that he found a handgun in the truck. *See Vaccaro*, 915 F.3d at 438 ("By admitting that he would have been allowed to return to his car, Vaccaro conceded that he could have gained 'immediate control of weapons' inside the vehicle."); *see also Gant*, 556 U.S. at 352 (Scalia, J., concurring) ("In the no-arrest case, the possibility of access to

weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.").[2]

[12] Affirmed in part, reversed and remanded in part.

Kirsch, J., and Altice, J., concur.

---

[2] Davis also argues that the search violated Article 1, Section 11 of the Indiana Constitution. In its brief, the State claims that Davis waived this issue by failing to challenge the search under the Indiana Constitution in the trial court. Davis did not file a reply brief to respond to the State's claim. Even if we found that this issue was not waived, Officer Morgan's limited search of the truck for a gun that Davis admitted possessing in the midst of a felony auto-theft investigation was reasonable under the Indiana Constitution. *See Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005) (setting forth three-part reasonableness test for searches and seizures under the Indiana Constitution).