Melvin BERRY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0108–CR–332.

Court of Appeals of Indiana.

April 30, 2002.

Bryan L. Cook, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Melvin Berry was charged with carrying a handgun without a license, a Class A misdemeanor.[1] He brings an interlocutory appeal of the denial of his motion to suppress the evidence of a handgun discovered on his person after police stopped him in his truck. The police stopped Berry due to information from an anonymous caller. Berry asserts that the reliability of the caller was insufficient to establish reasonable suspicion to warrant a valid investigatory stop under the United States and the Indiana Constitutions.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On the afternoon of December 17, 2000, Officer Leo George of the Marion County Sheriff's Department was dispatched to a Burger King restaurant due to a reported disturbance. An anonymous caller reported to the dispatcher that a suspect had produced a firearm and had waved it around in the parking lot. The caller also reported that the suspect had told individuals before he left the parking lot that he was going to "cap someone." The caller described the suspect as a white male in a green jacket, driving an S10 Blazer. The caller also provided a partial license plate number. At no point did the caller report that the suspect had fired any shots or that the suspect was in pursuit of someone after he left the parking lot.

In responding to this call, Officer George drove by the Burger King, but did not stop to investigate. Minutes later, and approximately six blocks away from the Burger King, he pulled over an S10 Blazer driven by Berry. Officer George testified that he had reasonable suspicion to believe that he had the right person because he had six out of seven matching numbers on the license plate. (Appellant's App. at 5.)

After Berry pulled over, Officer George and a back up officer, Officer Hustis, drew their weapons and ordered Berry out of his truck. After Berry exited the truck with his hands raised, Officer George ordered Berry to lift up his shirt and turn around. As Berry turned around, Officer George saw a handgun tucked in the back waistband of Berry's pants. As a result, he arrested Berry. During the arrest,

---

1. Ind.Code § 35–47–2–1, 23.

Berry denied that the reported disturbance ever occurred.

After the arrest, Officers George and Hustis went to the Burger King to investigate the reported disturbance. The officers were unable to establish the identity of the caller or verify whether the disturbance actually occurred.

## STANDARD OF REVIEW

■ We review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind. 1997). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered in reviewing a denial of a motion to suppress, we must also consider the uncontested evidence most favorable to the defendant. *Fair v. State*, 627 N.E.2d 427, 434 (Ind. 1993).

## DISCUSSION AND DECISION

Berry asserts the investigatory stop that resulted in the seizure of his gun was unlawful because it was based solely on an anonymous tip. As a result, he claims, the State violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, § 11 of the Indiana Constitution. We agree.

■ Because this case involves an investigatory stop, we must look to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which first addressed the reasonable suspicion required to conduct an investigatory stop.

Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S.Ct. 1868. Officer George's suspicion that Berry was armed or engaging in criminal activity did not arise from conduct that he observed. Officer George's suspicion arose solely from the information from the anonymous caller. Although a police officer may conduct an investigatory stop based on an anonymous tip, the tip must be corroborated by police and it must exhibit "sufficient indicia of reliability." *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

*White* established the test for determining the reliability of an anonymous tip in the context of a *Terry* stop. Police stopped White's vehicle based on an anonymous telephone tip. A vehicle search revealed drugs. The issue in *White* was whether the tip exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. The Supreme Court decided that under the totality of the circumstances, the anonymous tip exhibited sufficient indicia of reliability because the caller was able to predict White's future behavior, demonstrating that the caller had inside information. *Id.* at 332, 110 S.Ct. 2412. The Court explained that:

The general public would have had no way of knowing that [White] would

shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about individual's illegal activities.

*Id.* The Court went on to say that "when significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* In deciding that sufficient indicia of reliability existed, though, the Court admitted that this was a "close case." *Id.*

■ In the instant case, the anonymous caller made no predictions of Berry's future actions or behavior. The caller reported that the alleged disturbance had occurred and that the suspect had left the Burger King parking lot going southbound. These are events that had apparently already occurred. As a result, Officer George could not have tested the caller's credibility because the caller did not provide any predictions or describe any suspect behavior for the officer to corroborate or observe. If the incident had in fact occurred, anyone near the Burger King could have observed the alleged disturbance or the suspect leaving the parking lot. Therefore, the anonymous caller's tip failed to show the caller had inside information.

The Supreme Court specifically addressed reliability of anonymous tips regarding crimes involving firearms in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In *J.L.*, an anonymous caller reported to police that a young black male in a plaid shirt was standing at a particular bus stop and carrying a gun. The police found three black males at the bus stop, one wearing a plaid shirt. The men at the bus stop made no threatening or otherwise unusual movements. Police performed a *Terry* frisk on all three males, seizing a gun from J.L.

The Court decided that the anonymous tip, without more, was insufficient to justify an investigatory stop of J.L. *Id.* at 268, 120 S.Ct. 1375. It stated that an anonymous tip lacking the kind of indicia of reliability established in *White* did not justify a Terry stop "whenever and however it alleges the illegal possession of a firearm." *Id.* at 274, 120 S.Ct. 1375.

The State argues that *J.L.* is distinguishable from the present case because the danger in the present case was more immediate than the danger present in *J.L.* This claim is based on the notion that the caller's information in the present case concerned the commission of an armed felony. Therefore, the State argues, Officer George should have been able to conduct the investigatory stop to determine whether violence was imminent and whether an armed felony had occurred. (Br. of Appellee at 9.) However, "The mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a *Terry* stop without meeting the reliability requirement...." *J.L.*, 529 U.S. at 273, 120 S.Ct. 1375. To accept the State's argument, we would have to ignore the reliability requirements set forth by the Supreme Court and create an exception for cases involving armed felonies.[2]

---

**2.** In furthering its argument that *J.L.* does not apply to the present case, the State claims that the Supreme Court limited its holding to situations where lesser danger is involved.

"We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police

We decline to make that exception simply because the alleged crime in *J.L.* was not as dangerous as the alleged crime in the present case.

We also find it telling that the Court in *J.L.* refused to allow the *Terry* analysis to be modified to include a firearm exception. "Under such an exception, a tip alleging an illegal gun would justify a stop and frisk even if the accusation would fail standard pre-search reliability testing." *Id.* at 272, 120 S.Ct. 1375. Although the Court noted the public danger involved with firearms, it decided that an automatic firearm exception to its established reliability analysis would "rove too far." *Id.* The Court went on to say that "such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun." *Id.*

We recently relied on the above Supreme Court decisions regarding the standard for reliability of anonymous informants in *Washington v. State*, 740 N.E.2d 1241 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 7 (Ind.2001). In *Washington*, an anonymous informant contacted police to report a drunk driver. The informant described the vehicle as a black Cadillac with a white top. The informant also provided a license plate number and the direction in which the driver was travelling. A police officer located the suspect vehicle, verified the license plate number, and stopped the defendant even though the officer had not observed any drunken or erratic driving. After the police arrested Washington, they found drugs in the trunk of his car.

We found that the investigatory stop of Washington was invalid because the anonymous tip lacked any officer-observed activity that would provide an independent basis for a traffic stop. *Id.* at 1246. The stop was also invalid because of the "absence of detailed predictions of Washington's future behavior or other indicia of reliability that would reflect the knowledge of the anonymous caller." *Id.*

The State, however, invites us to set aside the *Washington* decision based on its assertion that we improperly relied upon the *J.L.* decision. The State asserts that an anonymous informant's ability to predict future behavior should be used as only one method for finding the informant reliable. The State suggests that the anonymous caller in the present case was reliable because the caller put his or her[3] anonymity at risk by staying on the telephone line as the dispatcher relayed the information to Officer George. It cites Justice Kennedy's concurring opinion in *J.L.* as support for this proposed method of establishing reliability.[4] However, we

can constitutionally conduct a frisk." (Br. of Appellee at 9) (quoting *J.L.*, 529 U.S. at 273–274, 120 S.Ct. 1375). The Court in *J.L.* still suggests that a report of someone carrying a firearm must bear at least some indicia of reliability. Because the anonymous informant in the present case failed to demonstrate any inside information regarding the suspect's future actions, we do not see how the informant exhibited any indicia of reliability. As a result, *J.L.* controls this case.

3. Officer George testified that he did not know whether the anonymous caller was a man or a woman because he never spoke to the caller personally. (Appellant's App. at 24.)

4. Justice Kennedy states in his concurring opinion that "the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tip." *J.L.*, 529 U.S. at 276, 120 S.Ct. 1375. Due to the fact that this is a suggested factor for determining reliability in a concurring opinion, we decline to give it more weight than the requirements established in previous Supreme Court majority opinions.

choose to follow the Supreme Court's majority opinion in *J.L.* and we therefore decline the State's invitation. The caller's tip did not exhibit sufficient indicia of reliability because he or she did not predict any future behavior on Berry's part that Officer George could corroborate.

Accordingly, we hold that Officer George improperly stopped Berry because the stop was based solely on an anonymous tip that lacked sufficient indicia of reliability. Officer George did not observe any activity that would have provided an independent basis or reasonable suspicion for stopping Berry. Also, the anonymous caller failed to provide any predictions of Berry's future behavior that would establish that he or she had inside knowledge of Berry's affairs. As a result, we must reverse.

Reversed.

NAJAM, J., and BAKER, J., concur.