## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2020, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katelyn Bacon
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| E.P., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 26, 2020 <br><br> Court of Appeals Case No. 19A-JV-3020 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark A. Jones, Judge <br><br> The Honorable Ryan K. Gardner, Magistrate <br><br> Trial Court Cause No. 49D15-1910-JD-1204 |

**Brown, Judge.**

[1] E.P. appeals his adjudication as a delinquent for committing dangerous possession of a firearm. We affirm.

### Facts and Procedural History

[2] At approximately 1:00 a.m. on October 2, 2019, Indianapolis Metropolitan Police Officer Jeffrey Newlin, who had the responsibility of patrolling the southwest side "answering 9-1-1 calls within the community," and Officer Zachary Taylor received a dispatch to the 1200 block of West Washington Street to investigate a report of shots fired by a black male wearing black pants and a black sweatshirt, firing a handgun, and walking eastbound on the north side of the street.[1] Transcript Volume II at 23. Both Officers Taylor and Newlin responded to the area and attempted to locate the suspect.

[3] Officer Newlin traveled east of the White River, did not initially see anyone, and drove to "basically Victory Field" looking for someone matching the description. *Id.* at 24. After a person on a bicycle waved him down, Officer Newlin proceeded westbound on Washington Street.

[4] Meanwhile, Officer Taylor observed one subject, E.P., walking by himself westbound on the north side of the street at approximately the 1200 block of West Washington Street immediately in front of the zoo. Officer Taylor shined the spotlight of his police vehicle and told E.P. to walk towards his vehicle and

---

[1] In the summary of argument in his appellant's brief, E.P. asserts that Officer Taylor's suspicion was based on an anonymous tip. The transcript reveals that the attorneys discussed cases involving anonymous tips, but E.P. does not point to the record to suggest the report of shots fired originated from an anonymous tip.

place his hands on the hood. At some point, Officer Taylor "got on the radio and said that . . . he had an individual matching that description" near 1200 West Washington Street on the north side of the street. *Id.* at 25. Officer Newlin activated his emergency lights and drove to the location as quickly as possible due to the nature of the run.

[5] Before conducting a pat-down search, Officer Taylor asked E.P. if he had any weapons on him. E.P. said, "No. Well, yeah, I have a gun in my pocket." *Id.* at 19. Officer Taylor recovered a handgun from E.P.'s right front pocket, placed it on the hood of his vehicle, and had E.P. sit on the curb. Officer Newlin arrived at the scene and asked E.P. how old he was, and E.P. said he was seventeen years old.

[6] On October 2, 2019, the State filed a petition alleging E.P. to be a delinquent child committing Count I, carrying a handgun without a license, and Count II, dangerous possession of a firearm, class A misdemeanors if committed by an adult.

[7] On October 31, 2019, the court held a hearing. During Officer Taylor's testimony, E.P.'s counsel requested permission to ask preliminary questions with respect to a motion to suppress and asked to suppress any further testimony on the basis of the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. After some discussion, the court denied the motion. The court entered a true finding as to Count II, dangerous possession of a firearm, and stated: "With regard to Count

um, double jeopardy purposes, I will show that uh, find that not true." *Id.* at 31. On November 21, 2019, the court entered a dispositional decree, placed E.P. on probation with a suspended commitment, and discharged him to his mother's custody.

## *Discussion*

[8] The issue is whether the trial court abused its discretion by admitting evidence following the stop. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

### A. *Fourth Amendment*

[9] E.P. argues Officer Taylor lacked reasonable suspicion to conduct an investigatory stop. He cites *Florida v. J.L.*, 529 U.S. 266 (2000), and asserts that this case presents an even more concerning intrusion. He argues Officer Taylor was unable to corroborate the information included in the tip and did not observe any suspicious behavior. The State argues the tip provided eyewitness

information that a crime had actually occurred and gave specific information regarding the location and description of the suspect.

[10] The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.

[11] In *Terry v. Ohio*, the United States Supreme Court established the standard for determining the constitutionality of investigatory stops. 392 U.S. 1, 88 S. Ct. 1868 (1968). The Court ruled that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity. *Id.* at 27, 88 S. Ct. at 1883. Reasonable suspicion exists if the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Powell v. State*, 841 N.E.2d 1165, 1167 (Ind. Ct. App. 2006). In judging the reasonableness of investigatory stops, courts must strike "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *Carter v. State*, 692 N.E.2d 464, 466 (Ind. Ct. App. 1997) (quoting *Brown v. Texas*, 443 U.S. 47, 50, 99 S. Ct. 2637, 2640 (1979)). When balancing these competing interests in different factual contexts, a central concern is "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field."

*Id.* (citing *Brown*, 443 U.S. at 51, 99 S. Ct. at 2640). Therefore, in order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. Whether an investigatory stop is justified is determined on a case by case basis. *Williams v. State*, 745 N.E.2d 241, 245 (Ind. Ct. App. 2001). In making this determination, we consider the totality of the circumstances. *Id.* "Judicial interpretation of what constitutes 'reasonable suspicion' is fact-sensitive." *Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind. Ct. App. 2003), *trans. denied*.

[12] In *Terry*, the United States Supreme Court held:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

392 U.S. at 21-22, 88 S. Ct. at 1880 (footnote omitted).

[13] An anonymous tip alone is seldom sufficient to provide the reasonable suspicion required to initiate an investigatory *Terry* stop absent evidence of the reliability of the tip, such as an accurate prediction of future behavior of the suspect. *Alabama v. White*, 496 U.S. 325, 329, 332, 110 S. Ct. 2412 (1990).

However, the United States Supreme Court has held that, even where an anonymous tip contained no prediction of future behavior, there was nevertheless sufficient indicia of reliability to support a *Terry* stop where an anonymous caller to an emergency police number gave eyewitness knowledge of alleged dangerous activity and accurate information identifying the suspect. *Navarette v. California*, 572 U.S. 393, 399-401, 134 S. Ct. 1683, 1688-1690 (2014). In *Navarette*, the Supreme Court clarified that an anonymous tip that substantially describes publicly knowable information about a suspect but does so through a 9-1-1 emergency system—which often "allow[s] for identifying and tracing callers"—and alleges that the suspect is "contemporaneous[ly]" engaged in "a specific and dangerous" activity, provides a sufficient basis for a *Terry* stop. *Id.* at 400, 403, 134 S. Ct. at 1689, 1691.

[14] Officer Newlin testified that his responsibility as an officer was to "patrol the southwest side . . . answering 9-1-1 calls within the community." Transcript Volume II at 23. While the record does not reveal that the caller provided specific predictions of E.P.'s future behavior, the caller did provide a description of the individual and a specific location. Officer Newlin testified that "the run came out" as a "black male wearing black pants and a black sweatshirt firing off a handgun" and "walking eastbound on the north side of the street." *Id.* at 24. Officer Taylor observed E.P. who matched the description given by dispatch walking by himself at approximately the 1200 block of West Washington Street, which is the location where officers were dispatched. The dispatch occurred at approximately 1:00 a.m. and Officer

Newlin testified that, once he heard Officer Taylor had an individual matching the description of the suspect on the north side of the street, he activated his emergency lights "and got to him as quickly as possible, because of the nature of the run." *Id.* at 25. Unlike in *J.L.*, which involved a mere report of a minor in possession of a firearm, the present call involved a report of shots fired. *See United States v. Hampton*, 585 F.3d 1033, 1038 (7th Cir. 2009) ("As we, and several of our sister circuits, have previously recognized, *J.L.* does not apply to emergency situations, so because we conclude that Smith's call reported an ongoing emergency, *J.L.* does not help [the defendant]." (citing *United States v. Hicks*, 531 F.3d 555, 558-559 (7th Cir. 2008)), *reh'g and reh'g en banc denied*, *cert. denied*, 560 U.S. 927, 130 S. Ct. 3345 (2010); *see also United States v. Edwards*, 761 F.3d 977, 985 (9th Cir. 2014) (addressing a stop following a report of someone shooting at cars and holding that such a situation distinguished the case from *J.L.*); *United States v. Holloway*, 290 F.3d 1331, 1338-1339 (11th Cir. 2002) ("A crucial distinction between *J.L.* and this case is the fact that the investigatory stop in *J.L.* was not based on an emergency situation. . . . [W]hen an *emergency* is reported by an anonymous caller, the need for immediate action may outweigh the need to verify the reliability of the caller."), *reh'g and reh'g en banc denied*, *cert. denied*, 537 U.S. 1161, 123 S. Ct. 966 (2003). Under the totality of the circumstances as presented by the record, we cannot say that reversal is warranted on this basis. *See Smith v. State*, 121 N.E.3d 669, 674-675 (Ind. Ct. App. 2019) (holding that an anonymous tip had sufficient indicia of reliability to provide reasonable suspicion of criminal activity justifying a *Terry* stop of the defendant's vehicle where, while the anonymous caller gave no predictions of

the defendant's future behavior to indicate the reliability of the tip, he or she did provide the following other indicia of reliability: the call was placed to an emergency number; the caller gave a specific description of the vehicle's color and model; the caller stated gunshots were coming from that vehicle; and the caller gave a specific location where the vehicle was actually found soon after the tip was received), *trans. denied*.[2]

B. *Article 1, Section 11*

[15] E.P. further argues the stop was unreasonable under Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[16] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, § 11 of our Indiana Constitution separately and independently. *Robinson v.*

---

[2] E.P. cites *Berry v. State*, 766 N.E.2d 805 (Ind. Ct. App. 2002), *trans. denied*. In that case, an anonymous caller reported to the dispatcher that a suspect had produced a firearm, waved it around in a parking lot, and said he was going to "cap someone." 766 N.E.2d at 806. The court noted that "[a]t no point did the caller report that the suspect had fired any shots or that the suspect was in pursuit of someone after he left the parking lot." *Id.* It concluded the officer improperly stopped the suspect because the stop was based solely on an anonymous tip that lacked sufficient indicia of reliability. *Id.* at 810. Unlike in *Berry*, the present case involved a report of shots fired. Further, we note *Berry* was decided before *Navarette*. *See Smith*, 121 N.E.2d at 674 n.8 (noting that *Berry* was decided before *Navarette*).

*State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). "The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct." *Hardister v. State*, 849 N.E.2d 563, 573 (Ind. 2006). "We consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Robinson*, 5 N.E.3d at 368 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[17]     With respect to the degree of concern, suspicion, or knowledge that a violation occurred, the police received a dispatch regarding shots fired at 1:00 a.m., Officers Taylor and Newlin responded to the area, and Officer Taylor observed E.P. who matched the description and at the location provided in the dispatch. As for the degree of intrusion, Officer Taylor shined a spotlight, had E.P. walk towards his vehicle and place his hands on the hood, retrieved a handgun from E.P.'s pocket after E.P. stated he had a gun in his pocket, and had him sit on the curb. As to the extent of law enforcement needs, "[p]rotecting the public from gun violence is a legitimate and paramount concern of law enforcement, and the State is legitimately concerned with deterring gun violence and possession of firearms by unlicensed individuals." *Grayson v. State*, 52 N.E.3d 24, 28 (Ind. Ct. App. 2016), *trans. denied*. Under the totality of the

circumstances, we conclude that reversal is not warranted under Article 1, Section 11 of the Indiana Constitution.

[18] For the foregoing reasons, we affirm the juvenile court's adjudication of E.P. as a delinquent.

[19] Affirmed.

Najam, J., and Kirsch, J. concur.